## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KARELIZ NIN** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : **3:17-CV-802** |
| | : **(JUDGE MARIANI)** |
| **LUZERNE COUNTY and** | : |
| **LUZERNE COUNTY CHILDREN** | : |
| **AND YOUTH SERVICES** | : |
| | : |
| **Defendants.** | : |

### MEMORANDUM OPINION

### I. INTRODUCTION

This is an action comprised of a single Section 1983 claim against Defendants

Luzerne County and Luzerne County Children and Youth Services ("LCCYS") for their

alleged involvement in the administration of Plaintiff's deceased child's estate. Pending

before the Court is Defendants' motion to dismiss the Amended Complaint. Doc. 32.

Plaintiff filed a Writ of Summons in the Court of Common Pleas of Luzerne County on

October 21, 2016, naming Luzerne County and LCCYS as Defendants. Doc. 1-1. On April

20, 2017, Plaintiff filed her Complaint in state court, alleging a single count of 42 U.S.C.

§ 1983 violation and naming only LCCYS as a defendant. *Id.* LCCYS removed the action

to this Court and moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docs. 1, 3. On

August 25, 2017, Plaintiff filed a motion for leave to amend the Complaint to add Luzerne

County as a defendant, without adding any new claims or substantive allegations. Doc. 19.

1

This Court granted Plaintiff's motion to amend, and Defendants filed a second motion to dismiss after the Amended Complaint was filed. Docs. 28, 32. For reasons that follow, Defendants' motion will be granted, without prejudice and with leave to Plaintiff to file a Second Amended Complaint.

## II. FACTUAL ALLEGATIONS

Plaintiff is the natural mother of Cecilia Nin. Doc. 29 ¶ 2. On December 28, 2012, Cecilia was taken to the Wilkes-Barre General Hospital by ambulance after she became unresponsive. *Id.* ¶ 9. Cecilia was later discharged to Plaintiff after the hospital performed various diagnostic tests. *Id.* ¶ 10. Seven days later, Cecilia was taken to Geisinger Wyoming Valley Medical Center because she was again unresponsive. *Id.* ¶ 11. Based on the results of the diagnostic tests and physical examinations performed during the second visit, LCCYS petitioned state court for dependency of Cecilia and Plaintiff's other two children, Reina and Faviyan, alleging suspected abuse. *Id.* ¶ 12. The state court granted LCCYS's petition and directed that Plaintiff's children be removed from her care and custody and placed into foster care. *Id.* ¶ 13. On January 7, 2013, while still an inpatient at Geisinger hospital, Cecilia died. *Id.* ¶ 14. The court then issued an order finding Cecilia as not dependent because she was deceased. *Id.* ¶ 15. According to Cecilia's Autopsy Report, Cecilia died due to blunt force trauma to the head, and separately suffered multiple healing bilateral rib fractures and forearm fractures. *Id.* ¶ 17. The death of Cecilia triggered

2

a criminal investigation by Luzerne County District Attorney's office, the status of which is unknown at this time. *Id.* ¶¶ 23, 24.

A little less than two years later, on October 29, 2014, Plaintiff received a "Representative Notice of Estate Administration Pursuant to Pa. O.C. Rule 5.6" regarding the Estate of Cecilia Nin (the "Representative Notice"), which was prepared and issued by two lawyers ("Estate Counsel") and named a third lawyer as administrator of the estate. *Id.* ¶¶ 26-28. Plaintiff alleges that she was never consulted or otherwise notified of the process to appoint a representative for Cecilia's estate. *Id.* ¶¶ 28-33. Plaintiff also alleges that she cannot access Cecilia's estate files because it is sealed. *Id.* ¶ 34. On August 10, 2015, Cecilia's estate representative filed a medical malpractice suit against various defendants, including Plaintiff. *Id.* ¶¶ 36, 90. Plaintiff alleges that "the only way Estate counsel could have come across the information necessary to prepare and file the [medical malpractice suit's] Complaint and continue to litigate the lawsuit would have been through illegal and unauthorized information disseminated through representatives of [LCCYS]." *Id.* ¶ 38. The medical malpractice Complaint presumably includes "very specific and detailed information with regard to Cecilia's medical treatment," the results of Cecilia's autopsy report, and details of Luzerne County Court of Common Pleas dependency hearing regarding Plaintiff's care of Cecilia. *Id.* ¶¶ 46-48. Plaintiff alleges that none of this information is public, that the

only way for Estate Counsel to access it would be "via Court Order or with the authorization of [Plaintiff]," and that "[n]either was secured in this case." *Id.* ¶¶ 50-52.[1]

Despite the opportunity to amend the Complaint to add Luzerne County as a Defendant, the Amended Complaint only references LCCYS in its substantive allegations. In order to view the Amended Complaint in the light most favorable to Plaintiff, the Court will construe the sole Section 1983 claim as pled against both Defendants. Plaintiff alleges that Defendants, "while acting under color of state law, unlawfully, intentionally, unreasonably, maliciously, with deliberate indifference and/or with reckless indifference to [Plaintiff's] civil rights, violated 42 U.S.C.A. § 1983 and deprived the [Plaintiff] of her rights and privileges guaranteed under the Constitution of the United States and laws...by acting as follows:

a. Violating various Child Protective Services laws;
b. Violating various HIPAA laws;
c. Conspiring to cover up, minimize and ignore the illegal activities of their employees, agents and servants;
d. Precluding [Plaintiff] from participation as a plaintiff in the medical malpractice action;
e. Denying [Plaintiff] parental input, decision-making and other rights inherent in her role as mother of Cecilia; and
f. Administering Cecilia's CYS investigation under a provisional state license."

*Id.* ¶ 84. The Amended Complaint offers few allegations detailing *how* Defendants

committed the violations above, or how these violations constitute a deprivation of

---

[1] While the Defendants attached the cover sheet of the medical malpractice suit to their motion to dismiss, doc. 32-3 at 71-72, neither party has attached or referenced the contents of the medical malpractice suit. Thus, it is unclear what non-public "information" contained in the medical malpractice suit's complaint may have been "disseminated through representatives of [LCCYS]." Doc. 29 ¶ 38.

constitutionally protected interests, except conclusorily alleging that "[LCCYS]'s collective policies and customs or lack thereof, including but not limited to its policy of being deliberately indifferent to training its staff members, employees, agents and servants in constitutional rights, privacy laws, and HIPAA laws, violated [Plaintiff's] rights guaranteed under the Fourteenth Amendment to the United States Constitution." *Id.* ¶ 87. Notwithstanding the lack of allegations that may substantiate a Section 1983 claim, the Amended Complaint includes a myriad of allegations that have little bearing on a Section 1983 action, such as alleging that LCCYS "conspired with its staff members…to name [Plaintiff] as an actual defendant in the [medical malpractice] action brought by the [Estate] Representative in order to preclude her from having any recourse she may have had…in any medical malpractice action" or including details of an "Inspection report" that found LCCYS to be understaffed or riddled with bureaucratic incompetence. *Id.* ¶¶ 63-72, 90. These allegations are not accompanied by any explanation as to how they impacted Plaintiff, nor is there any allegation linking these assertions to any policies or customs that Defendants may have implemented or failed to implement.

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at

6

678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

## IV. ANALYSIS

Defendants argue that dismissal should be granted on two grounds: statute of limitations and Eleventh Amendment immunity. The first argument is easily disposed of, as there remain disputed issues of fact as to when Plaintiff had notice of the factual basis of her claim. "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). "The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (citing *Kach*, 589 F.3d at 634). "The date of accrual in a § 1983 action is determined by federal law." *Id.* "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Id.* (quoting *Kach*, 589 F.3d at 634). "The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634 (citing *Barren v. United States*, 839 F.2d 987, 990 (3d Cir. 1988)).

It is hard to discern exactly what Plaintiff's alleged injury is based on the meandering nature of the Amended Complaint. Construing the pleadings liberally, it may be inferred that

Plaintiff's chief complaints are that (1) she was never informed of or consulted during the process to raise and administer Cecilia's estate, and (2) LCCYS's release of Cecilia's medical records to the estate representative was unauthorized by Plaintiff and therefore LCCYS violated Cecilia's privacy interests by releasing such information, a violation that Plaintiff should be in a position to vindicate as the rightful administrator of Cecilia's estate. *See, e.g.,* Doc. 29 ¶¶ 28-36, 38. As a result of this purportedly unauthorized release of medical records, the current estate representative was then able to initiate a medical malpractice suit naming Plaintiff as one of the defendants in the suit, thereby "preclud[ing] her from any recourse she may have had as her individual right as the natural parent of Cecilia in any medical malpractice action she may have sought to file…" *Id.* ¶ 90. The "preclusion" of Plaintiff from being able to recover from the medical malpractice suit, however, is not an actionable injury. Even if Plaintiff was named as a defendant in the medical malpractice suit, she would not be "precluded" from recovering from other defendants. In an ordinary suit, defendants may file cross-claims against other defendants as they see fit and seek recovery from any other party of the suit. Thus, the claim that Plaintiff, by virtue of being a named defendant in the medical malpractice suit, is somehow "precluded" from having "any recourse…as the natural parent of Cecilia" is simply untenable.

However, putting aside the incoherence of Plaintiff's alleged injuries; it appears that Plaintiff first learned of the fact that someone else has been appointed the representative of

Cecilia's estate on October 29, 2014, when she received the "Representative Notice of Estate Administration" for Cecilia, which would make her initiation of this action on October 21, 2016 timely. Doc. 29 ¶ 26. However, Defendants asks the Court to take judicial notice of an affidavit of service filed in state court proceedings, which shows that on October 2, 2014, Plaintiff was "served with the Petition for the Grant of Letters of Administration Pursuant to 20 Pa. C.S. § 3155(b) [for Cecilia's estate], filed by Joseph L. Vullo," the estate representative. Doc. 33 at 10. Defendants claim that "[i]ncluded with the Petition are [Cecilia's] autopsy records, which are among the documents Plaintiff claims were unlawfully disseminated by Defendant [LCCYS]." Doc. 33 at 5. Thus, "Plaintiff, having been served the Petition, was on notice that Estate Counsel was in possession of these records." *Id.* In other words, Defendants argue that Plaintiff should have deduced that Cecilia's medical records were disseminated by LCCYS when she was served with the Petition for the Grant of Letters of Administration on October 2, 2014. In support, Defendants attached the affidavit of service, which avers that Constable Joseph Yosh served the Petition to "Francisca Basulto, who is the grandmother of [Plaintiff], which [he] did at the direction of [Plaintiff] during a cell phone conversation with [Plaintiff] who resides at [Plaintiff's address], but who was not at home during [his] cell phone conversation with her." Doc. 32-3 at 69.

Defendants contends that the Court may take judicial notice of the affidavit of service because "the court may judicially recognize a fact that is not subject to judicial dispute because it ... can be accurately and readily determined from sources whose accuracy

9

cannot reasonably be questioned." Doc. 33 at 6 (citing F.R.E. 201(b)). However,

Defendants conflate the Court's ability to take notice of the fact that a court document has

been *filed* with the ability to adjudge the truthfulness of the document's *contents*. "To decide

a motion to dismiss, courts generally consider only the allegations contained in the

complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit*

*Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations

omitted). However, "[t]aking judicial notice of these documents *does not mean that the*

*court accepts as true all the contentions and allegations of the parties contained therein*."

*Hynoski v. Columbia Cty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 555 (M.D. Pa. 2013)

(emphasis added). "Rather, the court notices the fact of their filing and the rulings issued by

the court of record." *Id.*

Here, the fact that Constable Yosh filed an affidavit of service does not mean that his

assertions contained in that affidavit, including the statements that he handed the Petition to

Plaintiff's grandmother on October 2, 2014 and that he had a cellphone conversation with

Plaintiff on the same day, are to be taken as true. Plaintiff disputes that she ever spoke with

Constable Yosh on the phone. Doc. 39 at 4 (averring that during a December 21, 2017

state court proceeding regarding her Petition for the Revocation of Letters of Administration,

Plaintiff, "under oath, affirmed she never had discussions on the phone with Constable

Joseph Yosh, who has since died. Further, the grandmother of the Plaintiff, who Constable

Yosh purportedly served the Rule Returnable and Petition for Grant of Letters of

Administration on, did not speak English."). Thus, while the Court may take notice of the fact that an affidavit of service was filed in separate state court proceedings, it cannot take the contents contained in the affidavit of service as true. In other words, the Court cannot conclude that Plaintiff knew or should have known of her injury by October 2, 2014 at this stage of the litigation, because whether Plaintiff received the Petition on that date remains an issue of fact in dispute. *Cf. Pennsylvania Dep't of Human Servs. v. United States Dep't of Health & Human Servs.*, 241 F. Supp. 3d 506, 512 (M.D. Pa. 2017) ("A judicially noticed fact is one that is not subject to reasonable dispute. But the Commonwealth is not asking the court to take notice of the fact of the policy statement set forth in of Exhibit A, which is undisputed; it is asking the court to *interpret* the text of Exhibit A. The interpretation of the policy outlined in Exhibit A is disputed by the parties and therefore cannot be judicially noticed") (emphasis added and internal citation omitted), *aff'd sub nom. Commonwealth of Pennsylvania Dep't of Human Servs. v. United States*, 2018 WL 3559220 (3d Cir. July 25, 2018). Based on the documents that may be considered by the Court at this time, Plaintiff did not learn of the opening of Cecilia's estate until October 29, 2014, when she received the Representative Notice of Estate Administration for Cecilia's estate. Doc. 29 ¶ 26. *See also id.* ¶¶ 30-31 (alleging that Plaintiff "never met or had any consult with Estate Counsel or the Representative" and [o]ther than the Notice, [Plaintiff] had no participation in the opening

or administration of Cecilia's Estate"). Thus, the Amended Complaint cannot be dismissed based on statute of limitations grounds at this time. [2]

Turning to Defendants' second argument for dismissal, Eleventh Amendment immunity, the Court is constrained to point out that Defendants appear to conflate two distinct legal concepts: sovereign immunity under the Eleventh Amendment and the failure to plead a Section 1983 claim under Fed. R. Civ. P. 12(b)(6). Defendants argue that they are "governmental entit[ies]" and "as such, [are] immune from suit...[i]t is well established that governmental entities are immune from suit under the 11th Amendment of the United States Constitution, and generally cannot be sued under § 1983...Governmental entities may be sued under § 1983 in one limited circumstance: where the enforcement of an official governmental policy inflicts a constitutional violation." Doc. 33 at 11 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

While it is true that *states* and arms of states are granted Eleventh Amendment immunity, the same is not true for counties. The Supreme Court has long "recognized that the immunity of States from suit 'is a fundamental aspect of the sovereignty which the

---

[2] Plaintiff also argues that service of the Petition was not in strict compliance with Pennsylvania law, which "requires original process be served within the Commonwealth only by the sheriff" whereas here, "the Affidavit was signed by a Constable." Doc. 34 at 8. Plaintiff further argues that serving the Petition on Francisca Basulto was improper because Ms. Basulto never resided with Plaintiff at Plaintiff's residence. *Id.* These arguments miss the point. Accrual of a Section 1983 action is based on "when the plaintiff knew or should have known of the injury upon which the action is based." *Kach*, 589 F.3d at 634. Whether the Petitioner was served in strict compliance with Pennsylvania civil procedural requirements is of no moment as to when Plaintiff should have learned of the basis of her suit. As discussed above, one of Plaintiff's amorphously pled injuries is the fact that she was never consulted or notified of the appointment of a representative for Cecilia's estate. On the face of the Amended Complaint, Plaintiff did not learn of this fact until October 29, 2014 at the earliest. Doc. 29 ¶ 26. Thus, the Court cannot determine, at this stage of the litigation, whether Plaintiff's suit is barred by the statute of limitations.

12

States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the Convention or certain constitutional Amendments.'" *Northern Ins. Co. of New York v. Chatham Cty.*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693, 164 L. Ed. 2d 367 (2006) (quoting *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)). However, "[a] consequence of this Court's recognition of preratification sovereignty as the source of immunity from suit is that only States and arms of the State possess immunity from suits authorized by federal law. Accordingly, this Court has repeatedly refused to extend sovereign immunity to counties." *Id.* (collecting cases). *See also Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) ("The Supreme Court has long held that counties, municipalities and political subdivisions of a state are not protected by the Eleventh Amendment.") (internal citations omitted).

Here, Defendants appear to operate under the incorrect assumption that *all* "governmental entit[ies]," states and counties alike, are entitled to Eleventh Amendment immunity unless "the enforcement of an official governmental policy inflicts a constitutional violation." This is simply incorrect. Eleventh Amendment immunity is only granted to states and "arms of the state." Counties do not fall under either category. Further, Defendants do not argue that in this specific case, either Luzerne County or LCCYS "was acting as an arm of the State" in their actions toward Plaintiff. *Cf. Northern Insurance*, 547 U.S. at 194 ("Because the County may claim immunity neither based upon its identity as a county nor under an expansive arm-of-the-State test, the County is subject to suit unless it was *acting*

as an arm of the State...in operating the drawbridge [at issue].") (emphasis added).

Instead, Defendants do not dispute that they are county governmental entities, and further insist that Luzerne County and LCCYS "are not separate legal entities, but rather, LCCYS is an agency which exists and operates *within the authority of the County*." Doc. 33 at 10 (emphasis added)). Because Defendants argue that LCCYS is an agency of Luzerne County and because counties do not enjoy Eleventh Amendment immunity, neither Luzerne County nor LCCYS are entitled to such immunity.

Notwithstanding Defendants' conflation of the relevant legal concepts, the Court will dismiss the Amended Complaint for failure to adequately plead a Section 1983 claim. "In order to impose liability on a local governmental entity for failing to preserve constitutional rights, a plaintiff bringing a § 1983 claim must establish that: (1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91(1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the

14

rights of persons with whom those employees will come into contact.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999)). "Additionally, 'the identified deficiency in a [governmental entity's] training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Id.* (quoting *Canton*, 489 U.S. at 391).

In this case, the most concrete allegations in the Amended Complaint suggest that Plaintiff is attempting to plead a "failure-to-train" claim under Section 1983. Though the Amended Complaint alleges a slew of various unrelated misconduct, such as referencing a "conspiracy" or an "Inspection report" by the Pennsylvania Department of Public Welfare that found LCCYS to be understaffed, none of these allegations, even if taken as true, have anything to do with or suggest a policy whose application amounts to deliberate indifference by the Defendants and which led to a deprivation of Plaintiff's constitutional rights. Doc. 29 ¶¶ 63-72, 90. First, allegations of shortage of staff and bureaucratic troubles, without more, do not constitute constitutional violations. In addition, the Amended Complaint does not show how these bureaucratic deficiencies relate to Plaintiff or the claims she has attempted to plead. Second, a "conspiracy" is not a proper substitute for allegations of a governmental policy that causes constitutional violations. More fundamentally, the conspiracy-sounding allegations fail for the simple fact that a defendant cannot be found to be "conspiring" with itself. *Id.* ¶ 90 (alleging that LCCYS "conspired with its staff members, employees, agents

15

and servants to name [Plaintiff] as an actual defendant in the action brought by the Representative in order to preclude her from any recourse she may have had as her individual right as the natural parent of Cecilia in any medical malpractice action she may have sought to file and further impacting her children Faviyan and Reina.").

Viewing the Amended Complaint in the most favorable light, the most potentially relevant allegations that may form the basis of a Section 1983 claim are that LCCYS had "collective policies and customs or lack thereof, including but not limited to its policy of being deliberately indifferent to training its staff members, employees, agents and servants in constitutional rights, privacy laws, and HIPAA laws, violated [Plaintiff's] rights guaranteed under the Fourteenth Amendment to the United States Constitution" and that LCCYS had demonstrated "a failure to properly train [its] employees, agents and servants on breaching confidentiality laws, rules and regulations." *Id.* ¶¶ 87, 99. But these allegations are wholly conclusory. The Amended Complaint contains no substantive allegations (1) identifying the relevant constitutional right possessed by Plaintiff; (2) what policies or customs Defendants had implemented (or failed to implement) that led to her injury; (3) how that policy (or lack of policy) *caused* Plaintiff's alleged injuries; or even, (4) as discussed above, what her injuries *are* or how they can properly be categorized as constitutional deprivations. Without these allegations, the Amended Complaint fails to plead a Section 1983 claim. *See, e.g., McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("As an initial matter, McTernan fails to specify the relevant 'custom' or 'policy' here. To satisfy the pleading standard,

16

McTernan must identify a custom or policy, and specify what exactly that custom or policy was. Mere assertion of an entitlement to relief, without some factual showing, is insufficient under Fed. R. Civ. P. 8(a)(2). The complaint, which gives no notice as to the Defendants' improper conduct, simply alleges that McTernan's rights were violated 'due to the City's policy of ignoring First Amendment right[s.]' This is not sufficient.") (internal citations omitted); *Estate of Fabics v. City of New Brunswick*, 674 Fed. App'x 206, 210 (3d Cir. 2016) ("Appellants must not only identify a municipal custom or policy that caused their injury, but also specify what exactly that custom or policy was.") (internal quotation marks omitted); *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (dismissing a failure to train claim and noting that "[t]he complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations.").

In addition to failing to plead the relevant policies or customs at issue, the constitutional interest at issue, and a causal nexus between the relevant policies and her inadequately pleaded injuries, Plaintiff has also failed to plead deliberate indifference in her "failure-to-train" claim. "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" *Thomas*, 749 F.3d at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Without notice that a course of training is deficient in a particular respect,

17

decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'" *Thomas*, 749 F.3d at 223 (quoting *Bryan Cnty.*, 520 U.S. at 407). However, a single incident may also demonstrate a need for training if it is "so obvious, that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of constitutional violations." *Id.* (citing *Canton*, 489 U.S. at 390 n. 10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Bryan Cnty.*, 520 U.S. at 409).

Here, Plaintiff has not alleged a pattern of similar misconduct beyond what occurred in her own case, nor has she alleged a "single incident" that warranted a need for training that is "so obvious[] that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of constitutional violations." *Id.* at 223 (internal citation omitted). That is, there are no allegations demonstrating that the likelihood of Plaintiff's situation will recur and the predictability of Defendants' agents lacking the necessary tools is so high that what happened to Plaintiff alone could provide a basis for

18

single-incident municipal liability. At most, Plaintiff has alleged that LCCYS released

Cecilia's medical records to the representative of Cecilia's estate without "authorization,"

records that Plaintiff claims the estate representative used to initiate a medical malpractice

suit naming Plaintiff as a defendant. Doc. 29 ¶¶ 38, 51, 90. However, Plaintiff fails to point

to any factual basis that would support her allegation that the release of such information

was "unauthorized." For example, Plaintiff does not allege that the representative of the

estate was improperly appointed. Instead, she merely alleges that she "never met or had

any consult with Estate Counsel or the Representative" and that she "had no participation in

the opening or administration of Cecilia's Estate," *id.* ¶¶ 29, 30, all without explaining why

such consultation was legally necessary or whether her lack of participation in the estate

administration process nullifies the appointment, or otherwise renders the administration

inappropriate. Without such allegations, there is no basis for the Court to accept as an

adequate pleading that Plaintiff's lack of participation in the appointment of the estate

representative, or the representative's decision to initiate a medical malpractice suit, is in

any way improper. More fundamentally, the estate representative is not a defendant in this

suit. Even if the appointment of the representative *had* been improper, there is no allegation

that *Defendants* (who are county entities) should have known that the representative did not

adequately represent Cecilia's interests before releasing Cecilia's medical information to the

representative. On the face of the Amended Complaint, there is no reason to believe that

Defendants had any policies or customs (or lack thereof) that amounted to deliberate

19

indifference to Plaintiff's constitutional rights by releasing Cecilia's medical records to what appeared to be a legally appointed estate representative.

In other words, aside from failing to identify the relevant constitutional interests and Defendant policies and customs, the Amended Complaint failed to allege several causal links necessary to adequately plead a Section 1983 claim, including (1) how the appointment of an estate representative without consulting Plaintiff constitutes an actionable injury; (2) how the fact Plaintiff is "precluded" from participation in the medical malpractice suit filed by Cecilia's estate representative constitutes an actionable injury; (3) how Defendants in any way caused these injuries by release of Cecilia's medical records; (4) how, even assuming such release of medical records was improper, that release of records was the result of a specific policy (or lack thereof) that Defendants should (or should not) have implemented; (5) how such a policy (or lack thereof) led to a likelihood of constitutional violations; or (6 ) how the alleged misconduct raises the inference that Defendants acted with deliberate indifference. *See, e.g., Butler v. Lamont*, -- Fed. Appx. --, 2018 WL 3599294, at \*1 (3d Cir. July 26, 2018) ("A local government entity may be held liable under § 1983 only when the plaintiff demonstrates that the government entity itself caused the plaintiff's injury through the implementation of a policy or custom ... The plaintiff must also show that 'there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'") (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 n. 6 (3d Cir. 1996) ("We note,

however, that proof of the existence of an unlawful policy or custom alone is insufficient to maintain a § 1983 action. The plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered.") (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990)).

Finally, the Court is at a loss as to what injuries Plaintiffs has suffered or how Defendants may be held responsible for such injuries through their policies or training programs. Reading the Amended Complaint in the light most favorable to Plaintiff, it would seem that Plaintiff is attempting to plead that Cecilia's constitutional right to privacy has been violated through the posthumous "unauthorized" release of her medical records. *See, e.g.*, Doc. 29 ¶ 84 (alleging that Defendants "violated U.S.C.A § 1983 and deprived the [Plaintiff] of her rights and privileges guaranteed under the Constitution of the United States and laws, causing the aforementioned injuries by.... violating various Child Protective Services laws, violating various HIPAA laws..."). First, violation of HIPAA alone may not be a proper basis for a Section 1983 claim. *See, e.g., Kashkashian v. Markey*, 2017 WL 5518024, at *2 (E.D. Pa. Nov. 17, 2017) ("HIPAA, which deals with access to protected health information, does not provide a private cause of action and therefore is not a cognizable Fourteenth Amendment claim [against state officials under Section 1983]."); *Dade v. Gaudenzia DRC, Inc.*, 2013 WL 3380592, at *2 (E.D. Pa. July 8, 2013) (finding that Plaintiff could not bring a private action to enforce HIPAA obligations, whether through the statute itself or through § 1983). *Cf. Hatfield v. Berube*, 714 F. App'x 99, 105 (3d Cir. 2017)

21

("In addition, we agree that Hatfield cannot proceed with her claims under the HIPAA and the Privacy Act of 1974 based on [Allegheny County Children Youth and Family Services] employees' alleged disclosure of mental health diagnoses concerning her and her children. As the District Court explained, HIPAA does not create a private right of action for alleged disclosures of confidential medical information...") (internal citations omitted). In any event, Plaintiff has conceded that her "allegations of HIPAA violations and conspiracy are *mere bad facts* for the Defendants and add to the constellation of dubious, constitutional due process violations of the Defendants," thus suggesting that the allegations of HIPAA violations and conspiracy do not go the core of her Section 1983 claim. Doc. 34 at 13 (emphasis added).

Notwithstanding the confusion created by the Amended Complaint's scattered allegations, it may be true that the disclosure of medical information implicated *Cecilia's* constitutional right of privacy. *See Malleus v. George*, 641 F.3d 560, 564–65 (3d Cir. 2011) (noting that there are three categories of information that may be constitutionally protected: "sexual information, medical information, and some financial information" and that "[w]hile this is not an exhaustive list, it is clear that the privacy right is limited to facts and an individual's interest in not disclosing those facts about himself or herself."). However, Plaintiff has failed to plead how Cecilia's posthumous interest in the confidentiality of her medical records cannot be vindicated by the current representative of Cecilia's estate, or how Defendants' training programs or policies actually caused the alleged violation of

Cecilia's privacy rights. *See Doe v. Luzerne Cty.*, 660 F.3d 169, 176 (3d Cir. 2011) (affirming the District Court's dismissal of plaintiff's failure to train claim against the County and noting that "[i]n any event, Doe has not produced sufficient evidence demonstrating that a deficiency in the County's training program actually caused the alleged violation of her constitutional privacy right.").

Without non-conclusory allegations addressing the requisite elements of a failure-to-train claim, such as the existence of a constitutional interest possessed by Plaintiff; the existence of an inadequate policy or custom maintained by Defendants; a pattern of similar constitutional violations or a single-incident injury that was a highly predictable consequence of the failure to train; or a causal link between the constitutional violation and Defendants' actions, Plaintiff has failed to adequately plead a Section 1983 claim. The Amended Complaint will be dismissed without prejudice for failure to state a claim since the lack of factual allegations has not put Defendants on "fair notice" of the basis for the claim against them. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing *Twombly*, 127 S.Ct. at 1965 n. 3).

Finally, the Court notes that the Amended Complaint's scattershot approach and conclusory nature will not be countenanced by the Court a third time. Should Plaintiff choose to file a Second Amended Complaint, counsel shall strive to cure all deficiencies

23

discussed above; failure to do so may well result in dismissal of the suit with prejudice. *See Shine v. Bayonne Bd. of Educ.*, 633 F. App'x 820, 822 (3d Cir. 2015) ("While leave to amend should be granted freely, a court may deny a motion to amend where there is 'undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

## V. CONCLUSION

For the reasons outlined above, Defendant's motion to dismiss the Amended Complaint (Doc. 32) will be granted. A separate Order shall issue.

Robert D. Mariani
United States District Judge