## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KARELIZ NIN,                        :
                                    :
            Plaintiff               :        No.:  3:17-CV-0802
                                    :
VS.                                 :
                                    :        JURY TRIAL DEMANDED
LUZERNE COUNTY CHILDREN             :
AND YOUTH SERVICES, and             :
LUZERNE COUNTY                      :
                                    :
            Defendants              :

## THIRD AMENDED COMPLAINT

AND NOW, comes the Plaintiff, Kareliz Nin, by and through her attorneys, Comitz Law Firm, LLC, and hereby complains against the Defendants, Luzerne County Children and Youth Services and Luzerne County as follows:

### Parties

1.      Plaintiff Kareliz Nin ("Kareliz") is an adult individual residing at 50 Orchard Street, Wilkes-Barre, Luzerne County, Pennsylvania.

2.      Kareliz is the natural mother of Cecilia Nin, date of birth May 21, 2012, ("Cecilia"), Reina Nin, date of birth December 14, 2009, ("Reina"), and Faviyan Nin, date of birth July 12, 2006, ("Faviyan").

3.      Defendant Luzerne County Children and Youth Services ("CYS") is a governmental agency or entity of Defendant Luzerne County, organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of

business located at 111 North Pennsylvania Boulevard, Wilkes-Barre, Luzerne County, Pennsylvania.

4.     CYS is responsible for the safety, welfare, best interest and protection of children at risk from physical and emotional abuse, neglect and dependency when in CYS's legal and physical care, custody and control.

5.     Defendant Luzerne County ("County") is a county, political subdivision, governmental entity, and body politic of the Commonwealth of Pennsylvania organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 200 North River Street, Wilkes-Barre, Luzerne County, Pennsylvania.

6.     At all times relevant hereto, the various agents, servants and/or employees of the Defendants were acting under color of state law, within the course and scope of their employment, and in furtherance of and pursuant to CYS's official policies.

7.     CYS was responsible for the continued maintenance and control of Kareliz's and Cecilia's confidential and protected CYS files.

**Introduction**

8.     The facts of this case reveal that the County, CYS, their various agents, servants and/or employees intentionally, carelessly and recklessly disregarded the rights of Kareliz by disseminating confidential and protected information to parties

not entitled under law to receive the information and further violated her constitutional rights.

9.     As an arm and agency of the County, what CYS does and the manner in which it exercises its power throughout Luzerne County brings with it an incredible responsibility.

10.     On or about December 28, 2012, Cecilia was taken by ambulance to Wilkes-Barre General Hospital because she was unresponsive.

11.     At that time, various diagnostic tests were performed and Cecilia was discharged to home in the care of her mother, Kareliz.

12.     On or about January 4, 2013, Cecilia was taken to Geisinger Wyoming Valley Medical Center because she was unresponsive, and was later transferred to Geisinger Hospital in Danville.

13.     Based on the results of the diagnostic studies and physical examinations performed on this visit, CYS petitioned the Court for dependency of Cecilia, Reina and Faviyan, (collectively as the "Children"), alleging suspected abuse.

14.     The Court granted CYS's petition and directed that the Children be removed from the care, custody and control of Kareliz and be placed into foster care.

15.     Sadly, on January 7, 2013, while still an inpatient at Geisinger, Danville, and in the custody of CYS, Cecilia died.

16.     On January 7, 2013, the Court issued an Order finding Cecilia was not dependent because the child was deceased and the matter was discontinued.

17.     However, CYS continued to handle the case with regard to Reina and Faviyan, who were placed in foster care (the "Nin Case").

18.     The Autopsy Report regarding Cecilia dated January 9, 2013 and signed by S. Land, M.D. (4/1/13), states an opinion that the cause of death was blunt force trauma to the head, and also indicates findings of multiple healing bilateral rib fractures and fractures of the bilateral forearms.

19.     The Autopsy Report further indicates that the fractures of the ribs were evident on the pre-mortem x-rays obtained on December 28, 2012.

20.     Prior to this, Kareliz was not aware of Cecilia's healing rib fractures and, in fact, on December 28, 2012, was told by the emergency room staff that the chest x-rays were unremarkable and showed no signs of injury and was released with follow up as necessary.

21.     Cecilia's Death Certificate indicates the cause of death to be blunt force head trauma and the manner of death to be homicide.

22.     The death of Cecilia while in the custody of CYS triggered a fatality investigation.

23.     However, to date, there has been no Fatality Report issued by CYS.

24.     Additionally, because of the manner of death being listed as homicide, a criminal investigation was also initiated by the Luzerne County District Attorney's office.

25.     CYS files contain extremely sensitive and confidential information concerning children and their families.

26.     CYS's file on Kareliz contained reports including medical records, identifying information, and information about Cecilia and Cecilia's siblings.

27.     Kareliz does not know the status of the criminal investigation.

28.     Kareliz has never been charged or associated in any way with the homicide death of Cecilia.

29.     It is believed, and therefore averred, that, sometime after January 4, 2013, and prior to September 19, 2014, CYS caseworkers, Allison Cave ("Cave") and Michael Wurth ("Wurth"), contacted Dave Aikens, Esquire ("Attorney Aikens") and / or Andrew D. Bigda, Esquire ("Attorney Bigda") to discuss Cecilia's confidential CYS file.

30.     At all times relevant hereto, Cave and Wurth were agents, servants and/or employees of CYS and were acting under color of state law, within the course and scope of their employment, and in furtherance of and pursuant to CYS's official policies.

31.     It is believed, and therefore averred, Cave and Wurth contacted Attorney Aikens and / or Attorney Bigda and illegally disseminated Cecilia's and Kareliz's confidential CYS file to them in an attempt to persuade Attorney Aikens and Attorney Bigda to open an Estate on behalf of Cecilia and pursue a medical malpractice action.

32.     Attorney Aikens and Attorney Bigda had no knowledge of and / or had no relationship with Cecilia until after they were contacted by CYS and provided Cecilia and Kareliz's confidential CYS file.

33.     At the aforementioned time, there was no estate opened for Cecilia, therefore, the release of Kareliz's CYS file was not a dissemination to Cecilia's Estate.

34.     When CYS provided Cecilia's and Kareliz's confidential CYS file to Attorney Aikens and / or Attorney Bigda, there was no legally appointed representative of the Estate of Cecilia Nin.

35.     CYS's release of Cecilia's and Kareliz's confidential CYS file to Attorney Aikens and / or Attorney Bigda occurred prior to the filing of the Petition for Grant of Letters of Administration on September 19, 2014, and prior to the grant of Letters of Administration on October 27, 2014.

36.     CYS knew, or should have known, that Attorney Aikens and / or Attorney Bigda did not adequately represent Cecilia's interests before releasing

Cecilia's and Kareliz's confidential CYS file because it was CYS who reached out to Attorney Aikens and Attorney Bigda regarding Cecilia.

37.     As such, any release of Cecilia's and Kareliz's confidential CYS file to Attorney Aikens and / or Attorney Bigda, without the consent of Kareliz and / or prior to an estate being opened and a proper representative of the estate being appointed, was unauthorized.

38.     It is believed, and therefore averred, that, after CYS contacted Attorney Aikens and / or Attorney Bigda regarding Cecilia, and illegally provided them with Cecilia and Kareliz's confidential CYS file, Attorney Aikens and Attorney Bigda contacted Joseph L. Vullo, Esquire ("Attorney Vullo") and Donald P. Roberts, Esquire ("Attorney Roberts") to discuss opening an estate on behalf of Cecilia in order to pursue a medical malpractice action.

39.     Thereafter, on October 29, 2014, almost two years after Cecilia's death, Kareliz received Representative Notice of Estate Administration Pursuant to Pa. O.C. Rule 5.6 with regard to the Estate of Cecilia Nin ("Notice").

40.     The Notice was prepared and issued by Attorney Aikens and Attorney Bigda (collectively referred to as "Estate Counsel") and is undated.

41.     Moreover, Estate Counsel named Attorney Vullo as administrator of the estate ("Representative").

42. Kareliz never met or had any consult with Estate Counsel or the Representative.

43. Other than the Notice, Kareliz had no participation in the opening or administration of Cecilia's Estate.

44. At that time Kareliz was not made aware of why an Estate was being opened for Cecilia.

45. Kareliz never signed a renunciation as to administering the Estate of Cecilia.

46. Kareliz was never made aware, nor attended any hearings, to appoint someone other than a family member as the Representative of the Estate of Cecilia.

47. Oddly enough, Cecilia's Estate file located at the Luzerne County Register of Wills office is sealed and cannot be accessed by Kareliz.

48. As stated above, Estate Counsel had no prior relationship with Kareliz, her daughter Cecilia, or anyone in Kareliz's family.

49. Estate Counsel and the Representative of the Estate of Cecilia only became aware of Kareliz and her daughter Cecilia after they were contacted by CYS.

50. Prior to the opening of the Estate of Cecilia, Estate Counsel were not legally privy to the confidential information contained within Kareliz's and Cecilia's CYS files as they had no legal relationship with Cecilia and / or Kareliz and/or had no knowledge of Cecilia and/or Kareliz.

51.     Prior to the opening of the Estate of Cecilia, any dissemination of the information contained in Kareliz's and Cecilia's confidential CYS files to Estate Counsel, without Kareliz's permission, was illegal and unauthorized as there was no legal relationship between Estate Counsel and Kareliz or Cecilia.

52.     As stated above, Kareliz believes and therefore avers that the only way Estate Counsel could have come across the information necessary to open the Estate of Cecilia would have been through illegal and unauthorized dissemination of information through representatives of CYS prior to the opening of the Estate of Cecilia and the appointment of Representative.

53.     Additionally, on or about August 10, 2015, a medical malpractice lawsuit was filed in Luzerne County to Docket No. 2014-14050 (the "Complaint").

54.     The Complaint was filed by Estate Counsel on behalf of the Representative.

55.     Kareliz believes and therefore avers that the sole reason for the Estate Counsel to open the Estate of Cecilia was to file the Complaint for their own financial gain.

56.     Kareliz was neither consulted nor aware of the Complaint, or for that matter, how Estate Counsel would have been privy to such sensitive information since she was never consulted.

57.     Kareliz believes and therefore avers that the only way Estate Counsel could have come across the information necessary to open the estate, evaluate a possible medical malpractice claim, prepare and file the Complaint and continue to litigate the lawsuit, would have been through illegal and unauthorized dissemination of information through representatives of CYS prior to the opening of the Estate of Cecilia and the appointment of Representative.

58.     It is believed and therefore averred that CYS receives federal funding, and is thus subject to the Child Abuse Prevention and Treatment Act ("CAPTA").

59.     Kareliz has done everything that has been required of her by CYS in order for her to regain custody of Reina and Faviyan.

60.     CYS has thrown road blocks at her with every chance they had through various delays, causing Kareliz to spend money to litigate matters in Court and by outright violating Court Orders.

61.     When legal and physical custody of the Children was transferred to CYS, Kareliz and several other family members provided all of the required information necessary to apply for kinship care so the Children could be placed with family.

62.     Kareliz was told that all of the kin families that she recommended were not approved or were not eligible.

63.     In fact, one kinship care family applied on three occasions, but each time, the applications were either "lost" or "misplaced."

64.     Kareliz was given excuse after excuse as to why each of the kinship applicants were denied.

65.     It is believed and therefore averred that, despite CYS's extensive investigation, they were unable to ascertain the cause of Cecilia's injuries by whom said injuries were caused or if the injuries were non-accidental.

66.     Kareliz has never abused Cecilia, Reina or Faviyan, and at no time has CYS produced any evidence whatsoever that Cecilia, Reina or Faviyan had ever been abused by Kareliz.

67.     As a result of CYS's unfounded investigation, and throughout the duration of its investigation, Faviyan and Reina were placed in the case of CYS for more than five years, denying Kareliz's ability to spend time with Faviyan and Reina and further losing opportunities with Faviyan and Reina, all which greatly diminished Kareliz's ability to form a parent-child bond with Faviyan and Reina.

68.     After several years, and with no finding of abuse against Kareliz, she has finally been reunited with Reina and Faviyan.

69.     What CYS does and the manner in which it exercises its power over parents and children throughout Luzerne County brings with it an incredible responsibility.

70.     In particular, this power brings the duty to strictly adhere to the privacy laws governing Child Protective Services, Children and Youth Services case files, and personal knowledge of caseworkers, Court Appointed Guardians *ad litem*, Court Appointed Masters, and other agents, servants, and employees of CYS.

71.     There must be respect, transparency and cooperation, but in this case, there was contempt, collusion, secrecy and obstruction.

72.     Plaintiff has filed the within lawsuit to exact the full measure of justice permitted by law, to clear Kareliz's reputation, and to further recover other appropriate relief provided under 42 U.S.C.A. § 1983 for the CYS's respective violations of the Plaintiff's constitutionally protected civil rights.

73.     CYS's conduct as stated herein was in violation of the Plaintiff's civil rights as afforded and protected by the United States Constitution.

### VIOLATIONS OF 42 U.S.C. § 1983
### (Plaintiff vs. Defendants)

74.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73, above, as though same were set forth herein at length.

75.     The Notice contains confidential and detailed information with regard to Kareliz and Cecilia's personal information.

76.     The Estate Counsel would not have been able to open the Estate of Cecilia without access to confidential information, which is protected information by various county, state and federal rules and regulations.

77.     The Estate Counsel would have no reason to open an estate for Cecilia, an individual they had never met or known before, aside from a potential medical malpractice claim.

78.     The Estate Counsel would have no information to evaluate a potential medical malpractice claim on behalf of Cecilia without having access to highly confidential information prior to the opening of the Estate of Cecilia.

79.     The Complaint alleges very specific and detailed information with regard to Cecilia's medical treatment for both the December 28, 2012, Emergency Room visit and January 4, 2013 Emergency Room visit and subsequent inpatient stay.

80.     The Complaint also outlines the results of the autopsy performed on Cecilia.

81.     The Complaint further alleges specific details with regard to Luzerne County Court of Common Please dependency hearing with regard to Kareliz and Cecilia.

82.     All of the specific detailed information contained in the Complaint is highly confidential and protected by various County, State and Federal Rules and Regulations.

83.     Kareliz never gave any of this information to the Representative or the Estate Counsel.

84.     The Representative or the Estate Counsel had access to this information prior to the opening of the Estate of Cecilia.

85.     The information contained in the Complaint is not accessible to the public.

86.     The only way the information contained in the Notice and the Complaint can be considered accessible prior to the opening of the Estate of Cecilia would be by way of Court Order or with the authorization of Kareliz, neither of which were secured in this case.

87.     It is believed and therefore averred that CYS representatives contacted the Estate Counsel, unsolicited and illegally, and provided the information to Estate Counsel.

88.     Under the Fourteenth Amendment, an individual has a Constitutional right to privacy which protects the individual interest in avoiding disclosure of personal matters.

89.     An individual's Constitutional right to privacy includes a right to privacy of medical information and records.

90.     Under the Fourteenth Amendment, parents have a Constitutional right to be an integral part of their children's lives.

91.     Among the requirements for receiving federal funding under CAPTA, the state must preserve the confidentiality of all child abuse and neglect reports and

records to protect the privacy rights of the child and of the child's parents or guardians.

92.     Title 23 § 6339 of the Pennsylvania Consolidated Statutes, which pertains to Child Protective Services ("CPS") states that reports made by CPS, including but not limited to, report summaries of child abuse, as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of a county agency shall be confidential.

93.     Title 23 § 6340 of the Pennsylvania Consolidated Statutes identifies the persons to whom the aforementioned confidential information shall be made available.

94.     The Representative and Estate Counsel would not qualify as persons who can receive this confidential information in this instant matter because the Representative and Estate Counsel did not have any legal relationship with Cecilia or Kareliz when CYS provided the aforementioned confidential information to them.

95.     Title 55 § 3130.44 of the Pennsylvania Code states that information that may be used to identify a child or their parents by name or address and information contained in the family case record is confidential and "[a] staff person may not disclose or make use of information concerning the child or the parents."

96. Title 55 § 3130.44 of the Pennsylvania Code further states that information in the family case record may not be released to a person or agency, other than those specified in Title 55 § 3130.44, without prior authorization of the court.

97. The Representative and Estate Counsel would not qualify as persons who can receive family case record information in this instant matter, prior to the estate being opened, because they did not have any legal relationship with Cecilia or Kareliz when CYS provided the aforementioned confidential information to them.

98. Title 55 § 3490.91 of the Pennsylvania Code identifies the persons to whom child abuse information shall be made available.

99. The Representative and Estate Counsel would not qualify as persons who can receive child abuse information in this instant matter, because they did not have any legal relationship with Cecilia or Kareliz when CYS provided the aforementioned confidential information to them.

100. Title 55 § 3490.102 of the Pennsylvania Code states that "A person who willfully releases or permits the release of data or information contained in the pending complaint file, the Statewide Central Register or the county agency records, to persons or agencies not permitted by this chapter to receive this information shall be guilty of a misdemeanor of the third degree. In addition, the

person shall be denied access in the future to information that the person would otherwise be entitled to receive under the CPSL and this chapter."

101. Defendants have failed to implement any policies and / or procedures to ensure compliance with the aforementioned Federal and State laws.

102. Kareliz has a constitutionally protected right to privacy which protected the information within her CYS file concerning Cecilia.

103. Under the aforementioned Federal and State laws, Kareliz's CYS file must remain confidential in this matter.

104. At no time did Kareliz give the Representative or Estate Counsel authorization to obtain information in her CYS file, including but not limited to, Cecilia's medical records or the autopsy report.

105. Kareliz believes and therefore avers that the only way the Representative or Estate Counsel could have obtained Cecilia's medical records, Cecilia's autopsy report and / or Luzerne County Court of Common Pleas dependency hearing details was if such privileged and confidential information was voluntarily given to them by Defendants, their employees, agents and/or servants.

106. At the time CYS contacted Estate Counsel and provided them with the confidential information in Kareliz's and Cecilia's CYS files, CYS knew or should have known that an estate had not yet been opened and a representative had not yet been appointed because CYS initiated the contact with Estate Counsel.

107. CYS knew or should have known Estate Counsel did not represent Cecilia's interests when they released the confidential information to Estate Counsel because CYS had initiated the contact with Estate Counsel and informed Estate Counsel of the existence of Cecilia

108. CYS knew or should have known Estate Counsel did not represent Cecilia's interests when they released the confidential information to Estate Counsel because an estate had not been open, CYS was not provided any letters of administration and the Estate Counsel did not have any legally authority to access the information at that time.

109. Defendants violated Kareliz's constitutional right to privacy by illegally releasing information, which is held to be confidential and protected by the aforementioned Federal and State laws, to persons with no legal standing to have access to said information at the time of dissemination.

110. Although CYS was, or should have been, aware of the extremely sensitive and confidential information contained in Kareliz's CYS file, they illegally contacted Estate Counsel and released said information to the Estate Counsel with deliberate indifference to Kareliz and her entire family's right to privacy.

111. The information in Kareliz's CYS file is no longer confidential, and has since been used against Kareliz in the administration of Cecilia's estate, the Complaint and custody proceeding regarding Kareliz's two other children.

112. The information in Kareliz's CYS file has been made public in the Complaint.

113. Kareliz made CYS aware of the improprieties of its employees, agents and servants with regard to disseminating this confidential material.

114. Subsequently, in light of the blatant and self-serving improprieties of the Defendants' employees, agents and servants, a Court Order was issued to remove the Guardian *Ad Litem* from the Nin Case, and precluded all case workers and staff at CYS's Wilkes-Barre office from working on the Nin Case.

115. From that point forward, it was directed that the Wilkes-Barre CYS office, its agents and employees were no longer to have any further contact or involvement in the Nin Case.

116. Rather, all matters surrounding the Nin Case would be handled by a caseworker and supervisor out of CYS's Hazleton office.

117. Due to the ongoing staff shortages admittedly suffered by CYS, there were no supervisors in the Hazleton office and, therefore, a Wilkes-Barre supervisor had to be assigned over Hazleton caseworker.

118. These staff shortages are clearly recognized and outlined in the Pennsylvania Department of Public Welfare's licensing / approval inspection dated May 24, 2013, ("2013 Inspection Report").

119.  By the end of 2012, the agency had approximately twenty-nine (29) caseworker vacancies of which they permanently lost 19 positions.

120.  Additionally, the 2013 Inspection Report indicates that the decision to downsize the agency was made due to budget related issues.

121.  Significantly, the 2013 Inspection Report indicates that "Although it would be premature to speculate how the shortage of caseworkers will ultimately affect the services to children and families…This has placed even higher demands on already overburdened casework staff who are currently working overtime to meet this demand."

122.  The acknowledgement of under staffing issues continues to be addressed in the Pennsylvania Department of Public Welfare Licensing Inspection Summary dated September 17, 2014 ("2014 Inspection Summary").

123.  It is further addressed in the inspection report dated September 25, 2015, where it is admitted that the current staffing levels are insufficient to meet the needs of the children / families of Luzerne County and that the staffing issues have contributed to the lack of up-to-date case documentation making it increasingly difficult to review case files in order to complete annual licensing inspection, but even more concerning that the files that were reviewed were only a very small sample of cases active within the agency and therefore the extent of

regulatory and practice deficiencies may be of an even more alarming nature should all of the cases had been reviewed ("2015 Inspection Report").

124.    Furthermore, the Pennsylvania Department of the Auditor General's September 2017 State of the Child Special Report refers to "wholesale system breakdowns" that severely impact CYS' ability to do their job. ("2017 State of the Child").

125.    The 2017 State of the Child specifically states that CYS employees, agents and servants including, but not limited to CYS caseworkers, "receive inadequate training."

126.    Additional conflicts, incompetence and chaos ensued in the handling of the Nin Case by CYS such that another Court Order was issued barring further Wilkes-Barre CYS supervisory involvement.

127.    Further, around that time, it is believed and therefore averred that on two separate occasions, referrals of the aforesaid illegal conduct were made to the Luzerne County District Attorney's Office.

128.    It is unknown as to the status of those criminal referrals.

129.    The shortage of staff and overburdened caseworkers have left Defendants without the necessary resources to properly train and / or supervise their employees, agents and servants including, but not limited to CYS

caseworkers, a Child Protective Services investigator, Guardian *ad litem*, and Court Appointed Master.

130.   Defendants' failure to train and / or supervise their employees, agents and servants including, but not limited to CYS caseworkers, a Child Protective Services investigator, a Court-appointed Guardian *Ad Litem*, and Court-appointed Master amounts to subjective recklessness for the rights of the children and families, including Kareliz, involved with CYS.

131.   It is alleged that the illegal activity noted above was carried out by Defendants, their employees, agents and servants including, but not limited to CYS caseworkers, a Child Protective Services investigator, a Court-appointed Guardian *ad litem*, and Court-appointed Master.

132.   Although Kareliz has done everything that has been required of her by CYS in order for her to regain custody of Reina and Faviyan, both children remain in foster care.

133.   CYS has continually violated Kareliz's constitutional right to be an integral part of Reina's and Faviyan's lives, despite the fact that she has done everything required of her by CYS.

134.   It is alleged that all of this was, and continues to be, done in retaliation for Kareliz bringing light to the illegal activities of the Defendants' employees, agents and servants.

135. The understaffing of CYS left CYS incapable of properly training and / or supervising their employees, agents and servants regarding the confidentiality of CYS files, including Kareliz's.

136. The understaffing of CYS has further created an environment without proper oversight and or handing of CYS files, including Kareliz's, which has led to a violation of her Constitutional rights.

137. Caseworkers have left Defendants without the necessary resources to properly train and / or supervise their employees, agents and servants.

138. It is further alleged that the delays, inadequate handling of the Nin Case, and dissemination of both Kareliz's and Cecilia's confidential information is a prime example of the understaffing and subsequent provisional licensing of CYS.

139. Defendants, their various agents, servants and/or employees, while acting under color of state law, unlawfully, intentionally, unreasonably, maliciously, with deliberate indifference and /or with reckless indifference to Kareliz's civil rights, violated 42 U.S.C.A § 1983 and deprived the Kareliz of her rights and privileges guaranteed under the Constitution of the United States and laws, causing the aforementioned injuries by acting as follows:

     a.   Violating various Child Protective Services laws;

b. Attempting to cover up, minimize and ignore the illegal activities of their employees, agents and servants;

c. Releasing confidential information regarding Kareliz and Cecilia's CYS file to individuals with absolutely no legal standing to have access to said information at the time of dissemination;

d. Delaying, inadequately and improperly handling the Nin Case, in violation of Kareliz's right to due process;

e. Delaying, inadequately and improperly handling the Nin Case, in violation of Kareliz's right to be an integral part of Reina and Faviyan's lives;

f. Violating the requirements of CAPTA;

g. Having a pattern, custom, policy, or practice that resulted in their illegal and unauthorized dissemination of Kareliz and Cecilia's CYS file;

h. Having a pattern, custom, policy, or practice that resulted in their failure to properly train and / or establish proper training procedures for their employees and agents;

i. Failing to train their employees in the context of confidentiality of CYS files;

j. Staffing non-qualified and incompetent personnel;

k. Being and /or causing to be inadequately funded and / or staffed so as to create an environment incapable of insuring confidential information is not released to improper persons;

l. Adhering to a history and custom of being deliberately indifferent to training as to parents' and children's constitutional rights;

m. Failing to implement any policies and / or procedures, and / or failing to properly train various agents, servants and/or employees as to

any policies or procedures, to ensure confidential information is not released to improper persons; and

n.     Administering Cecilia's CYS investigation under a provisional state license.

140.   More specifically, Cave and Wurth contacting Estate Counsel and subsequently releasing Kareliz's CYS file to two attorneys, who at the time had no relationship and / or involvement with Kareliz and / or Cecilia or her estate, violated Kareliz's right to privacy which protects her interest in avoiding disclosure of personal matters, including her CYS file.

141.   Defendants' release of Kareliz's confidential CYS file led to further complications in Kareliz's custody of Faviyan and Reina, her exclusion in administering Ceilia's estate and her being named as a defendant in the Complaint.

142.   Further, the continued separation of Faviyan and Reina from Kareliz by CYS and the refusal of CYS to otherwise permit Kareliz to have contact and continuous familial relations and have a parental bond with Faviyan and Reina when they knew that they had no evidence that Kareliz had ever abused or neglected Faviyan or Reina further violated Kareliz's Fourteenth Amendment right to procedural due process.

143.   Moreover, the removal of Faviyan and Reina from Kareliz's home without reason to believe that Faviyan and Reina were in imminent danger, the refusal to thereafter return Faviyan and Reina to Kareliz's home for more than five

years despite obtaining no additional evidence during that time that Faviyan and Reina were in any danger, and the refusal to permit Kareliz to have continued contact with Faviyan and Reina, violated Kareliz's substantive due process rights to familial integrity and privacy, denying Kareliz valuable bonding time with Faviyan and Reina that she can never get back.

144. Defendants violated various Child Protective Services laws by independently contacting Estate Counsel regarding Cecilia, and thereafter illegally releasing Kareliz's confidential CYS file to Estate Counsel, so they could evaluate the file for a possible medical malpractice claim, when Estate Counsel had no knowledge of Cecilia and / or Kareliz, and did not have any legal standing to have access to said information at the time of dissemination.

145. Defendants violated CAPTA by failing to preserve the confidentiality of Kareliz's records and independently contacting two attorneys regarding a potential medical malpractice claim on Cecilia's behalf, in clear violation of the privacy rights of Cecilia, Faviyan, Reina and Kareliz.

146. CYS's understaffing created an environment in which Defendants' employees, agents and/or servants were not adequately trained in confidentially of CYS files which lead to the unauthorized and illegal dissemination of Kareliz's confidential CYS file.

147. Furthermore, CYS's understaffing created an environment in which Defendants were incapable of properly handing and / or supervising Kareliz's file, which allowed CYS agents, employees and / or servants, to illegally contact personal injury attorneys to discuss Kareliz's confidential file.

148. The harm and damages caused to Kareliz were a foreseeable and direct consequence of the illegal and deliberate actions and omissions of Defendants as described herein.

149. The above conduct violated the substantive and procedural due process rights of Kareliz.

150. Defendants' collective policies and customs or lack thereof, including but not limited to its policy of being deliberately indifferent to training its staff members, employees, agents and servants in constitutional rights, and both federal and state privacy laws, violated Kareliz's rights guaranteed under the Fourteenth Amendment to the United States Constitution.

151. As a direct and proximate result of the Defendants' aforesaid intentional acts actions and inactions, Kareliz has suffered deprivations of her constitutional rights to substantive and procedural due process.

152. The conduct as described herein was a deprivation, under color of state law, of rights guaranteed to Kareliz under the Fourteenth Amendment to the United States Constitution.

153. Defendants, through their various agents, servants and/or employees permitted a climate of complacency by allowing policies and customs described herein to exist.

154. As a direct and proximate result of Defendants' aforesaid intentional actions and inactions, the confidential information in Kareliz's CYS file has been used against her in both the administration of Cecilia's estate and the Complaint.

155. As a direct and proximate result of Defendants' aforesaid intentional actions and inactions, the Estate Counsel continues to attempt to disqualify Kareliz as a rightful beneficiary to Cecilia's estate.

156. As a direct and proximate result of Defendants' aforesaid intentional actions and inactions, the Estate Counsel has prevented Kareliz from participating in the administration of Cecilia's estate.

157. As a direct and proximate result of Defendants' aforesaid intentional actions and inactions, the confidential information in Kareliz's CYS file has been made public in the Complaint.

158. As a direct and proximate result of Defendants' aforesaid intentional actions and inactions, Kareliz has suffered mental anguish, anxiety, distress, stress, sleeplessness and humiliation.

159. The conduct of Defendants memorializes a deliberate indifference to Kareliz and demonstrated a reckless disregard, and was committed in

conscious disregard of the substantial and unjustifiable risk of causing harm to Kareliz, and was so egregious and illegal as to shock the conscience entitling Kareliz to an award of punitive damages.

160. The actions of the Defendants, their staff members, agents, servants and/or employees as set forth above were intentional, willful, malicious, wanton, reckless, oppressive, and / or outrageous and illegal, entitling Kareliz to an award of punitive damages.

161. The actions and conduct of Defendants as described herein were a substantial factor in causing the Kareliz's harm and damages.

162. The conduct as set forth above evidences a state-created danger perpetrated by Defendants against Kareliz.

163. The conduct as set forth above demonstrates a failure to properly train Defendants' employees, agents and servants on breaching confidentiality laws, rules and regulations.

164. If Defendants are not held accountable for their intentional, willful, malicious, wanton, reckless, oppressive, and/or outrageous and illegal actions it is highly likely they will continue to release Kareliz's, and other individual's, confidential information.

165. It is clear from the 2013 Inspection Report, the 2014 Inspection Summary, the 2015 Inspection Report and the 2017 State of the Child, that

Defendants lack the necessary tools to maintain, secure and control the confidential information contained within CYS files.

166.   Prior to CYS contacting Estate Counsel, Estate Counsel did not have any knowledge of Kareliz, Cecilia, or the events that took place in December of 2012 and January 2013.

167.   Estate Counsel and the Representative would not have any involvement in the Estate of Cecilia had CYS not illegally contacted them regarding the CYS file.

168.   Estate Counsel and the Representative have greatly benefited from the illegal and unauthorized dissemination of information through representatives of CYS, since they would not be representing the Estate of Cecilia if CYS had not violated Kareliz's constitutional rights.

169.   Estate Counsel and the Representative are therefore not in a position to properly vindicate Cecilia's posthumous interest in the confidentially of her medical records, as doing so would undermine their appointment in the first place.

170.   The aforementioned actions of Defendants, under color of state law, subjected Kareliz to a deprivation of rights and privileges secured to her by the Constitution and laws of the United States of America within the meaning of 42 U.S.C.A. § 1983.

WHEREFORE, the Plaintiff, Kareliz Nin, hereby demand judgment in her favor and against Defendants, Luzerne County Children and Youth Services and Luzerne County in an amount in excess of the jurisdictional amount of Fifty Thousand Dollars ($50,000.00), together with punitive damages, attorneys' fees pursuant to 42 U.S.C.A. § 1988, interest, costs and such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

COMITZ LAW FIRM, LLC

DATED:___October 3, 2019___     BY:  */s/ Rachael A. Litchman*
                                      RACHAEL A. LITCHMAN, ESQ.
                                      I.D. NO.: 322516
                                      46 Public Square, Suite 101
                                      Wilkes-Barre, PA 18701
                                      (570) 829-1111
                                      (570) 829-1112 (fax)
                                      rlitchman@comitzlaw.com

                                      Attorney for Plaintiff
                                      Kareliz Nin