THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARELIZ NIN | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:17-CV-802 |
| | : | (JUDGE MARIANI) |
| LUZERNE COUNTY and | : | |
| LUZERNE COUNTY CHILDREN | : | |
| AND YOUTH SERVICES | : | |
| | : | |
| Defendants. | : | |

MEMORANDUM OPINION

I. INTRODUCTION AND PROCEDURAL HISTORY

This case arises out of a 42 U.S.C. § 1983 claim against Defendants Luzerne

County and Luzerne County Children and Youth Services ("LCCYS") related to disclosure of

confidential information and dependency proceedings resulting in a custody determination

granting removal of Plaintiff's children.   (Doc. 65.)  Pending before the Court is Defendants'

Motion to Dismiss Plaintiff's Third Amended Complaint. (Doc. 67.)

Plaintiff filed a Writ of Summons in the Court of Common Pleas of Luzerne County

on October 21, 2016, naming Luzerne County and LCCYS as Defendants.  (Doc. 1-1.)  On

April 20, 2017, Plaintiff filed her Complaint in state court, alleging a single 42 U.S.C. § 1983

violation and naming only LCCYS as a defendant.  (*Id.*)  LCCYS removed the action to this

Court (Doc. 1) and moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

(Doc. 3.)  On August 25, 2017, Plaintiff filed a motion for leave to amend the Complaint to

add Luzerne County as a defendant, without adding any new claims or substantive

allegations.  (Doc. 19.)  The Court granted the motion (Doc. 28) and Plaintiff filed the

Amended Complaint on October 26, 2017 (Doc. 29).  On November 9, 2017, Defendants filed a second motion to dismiss.  (Doc. 32.)  The Amended Complaint was dismissed with leave to amend on August 3, 2018.  (Doc. 52.)

On August 24, 2018, Plaintiff filed a Second Amended Complaint (Doc. 53), which Defendants again moved to dismiss.  (Doc. 57.)  The Court dismissed the complaint with leave to amend.  (Docs. 63, 64.)  In so doing, the Court noted that allowing another leave to amend was "in the interest of providing Plaintiff a final opportunity to set forth a properly pleaded Complaint."  (Doc. 63 at 12.)

On October 3, 2019, Plaintiff filed the Third Amended Complaint.  (Doc. 65.)  On October 23, 2019, Defendants filed the Motion to Dismiss at issue here pursuant to Rule 12(b)(6).  (Doc. 67.)  The issues have been fully briefed (Docs. 68-70) and Defendants' Motion is ripe for disposition.  For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

## II. FACTUAL ALLEGATIONS

Plaintiff's Third Amended Complaint (Doc. 65) alleges the following facts which, for the purposes of resolving Defendant's Motion to Dismiss, the Court takes as true.

Plaintiff is the natural mother of Cecilia Nin, born May 21, 2012.  (Doc. 65 ¶ 2.)  On December 28, 2012, Cecilia was taken to the Wilkes-Barre General Hospital by ambulance after she became unresponsive.  (*Id.* ¶ 10.)  Cecilia was later discharged to Plaintiff after the hospital performed various diagnostic tests.  (*Id.* ¶ 11.)  On January 4, 2013, Cecilia was taken to Geisinger Wyoming Valley Medical Center because she was again unresponsive.

(*Id.* ¶ 12.)  Based on the results of the diagnostic tests and physical examinations performed during the second visit, LCCYS petitioned the state court for dependency of Cecilia and Plaintiff's two older children, Reina and Faviyan, alleging suspected abuse.  (*Id.* ¶ 13.)  The state court granted LCCYS's petition and directed the three children be removed from her care and custody and placed into foster care.  (*Id.* ¶ 14.)  On January 7, 2013, while still an inpatient at Geisinger hospital and in the custody of LCCYS, Cecilia died.  (*Id.* ¶¶ 15, 22.)  The state court issued an order finding Cecilia not dependent because she was deceased.  (*Id.* ¶ 16.)  LCCYS continued to handle the case regarding Reina and Faviyan who were placed in foster care.  (*Id.* ¶ 17.)  Cecilia's Autopsy Report reported the manner of death was a homicide caused by blunt force trauma to the head and she separately suffered multiple bilateral rib and forearm fractures.  (*Id.* ¶¶ 18–19, 21.)  Cecilia's death triggered a fatality investigation and a criminal investigation by Luzerne County District Attorney's office, but the status of these investigations is unknown.  (*Id.* ¶¶ 23–24, 27.)  Plaintiff has never been charged with the homicide death of Cecilia.  (*Id.* ¶ 28).  As a result of CYS's investigation, Plaintiff's two older children were placed in the custody of LCCYS for more than five years until they were reunited with Plaintiff after there was "no finding of abuse against [Plaintiff]." (*Id.* ¶¶ 65–68.)

Between January 4, 2013 and September 19, 2014, LCCYS caseworkers Allison Cave and Michael Wurth contacted attorneys Dave Aikens and Andrew Bigda (collectively "Estate Counsel"), and discussed and disseminated Plaintiff's and Cecilia's confidential LCCYS file in an attempt to persuade Estate Counsel to open an estate on behalf of Cecilia

and file a medical malpractice action.  (*Id.* ¶¶ 29–31.)  Estate Counsel contacted attorneys

Joseph Vullo and Donald Roberts to discuss opening an estate in order to pursue the

medical malpractice action.  (*Id.* ¶ 38.)  Estate Counsel had no prior relationship with

Cecilia.  (*Id.* ¶ 32.)  At the time, no estate had been opened for Cecilia and there was no

legally appointed representative of an estate for Cecilia.  (*Id.* ¶ 33–34.)

On October 29, 2014, Plaintiff received a "Representative Notice of Estate

Administration Pursuant to Pa. O.C. Rule 5.6" regarding the Estate of Cecilia Nin, which

was prepared and issued by Estate Counsel and named Vullo as administrator of the

estate.  (*Id.* ¶¶ 39–41.)  Plaintiff was never consulted or otherwise notified of the process to

appoint a representative for Cecilia's estate and had no participation in the administration of

Cecilia's estate.  (*Id.*  ¶¶ 42–46.)  Plaintiff cannot access Cecilia's estate file because it is

sealed.  (*Id.* ¶ 47.)  Prior to the opening of Cecilia's estate, Estate Counsel were "not legally

privy to the confidential information contained within Plaintiff and Cecilia's CYS files."  (*Id.* ¶

50.)  Thus, any dissemination of that information was "illegal and unauthorized."  (*Id.* ¶ 51.)

On August 10, 2015, Estate Counsel filed a medical malpractice suit against various

defendants, including Plaintiff, on behalf of the estate representative.  (*Id.* ¶¶ 53–54.)

Plaintiff alleges the sole reason for Estate Counsel to file the complaint was for their own

financial gain.  (*Id.* ¶ 55.)  Plaintiff was not aware of and was not consulted about the

lawsuit.  (*Id*. ¶ 56.)  Plaintiff alleges "the only way Estate Counsel could have come across

the information necessary to open the estate, evaluate a possible medical malpractice

claim, prepare and file the Complaint and continue to litigate the lawsuit, would have been

4

through illegal and unauthorized dissemination of information." (*Id.* ¶ 57.) The medical malpractice complaint contains "very specific and detailed information" including information regarding Cecilia's emergency room visits, inpatient stay, autopsy, and details of the dependency hearing regarding Plaintiff's care of Cecilia. (*Id.* ¶¶ 79–81.) "All of the specific detailed information contained in the Complaint is highly confidential and protected by various County, State and Federal Rules and Regulations." (*Id.* ¶ 82.) This information is not public, and Plaintiff did not give any of this information to the Estate Counsel or Estate Representative. (*Id.* ¶¶ 83, 85.) Nonetheless, the Representative or the Estate Counsel had access to this information before the Estate was opened. (*Id.* ¶ 84.) "The only way" this confidential information could have been disclosed is through a Court Order or Plaintiff's authorization. (*Id.* ¶ 86.) Thus, Plaintiff alleges "CYS representatives contacted the Estate Counsel, unsolicited and illegally, and provided the information to Estate Counsel." (*Id.* ¶ 87.)

Plaintiff asserts "Defendants have failed to implement any policies and/or procedures to ensure compliance with" federal and state laws that govern Child Protective Services and protect privacy. (*Id.* ¶ 101.) Plaintiff further alleges that when Defendants disclosed the file to Estate Counsel, Defendants "knew or should have known that an estate had not yet been opened," "a representative had not yet been appointed," and "Estate Counsel did not represent Cecilia's interests" because Defendant initiated the contact with Estate Counsel and informed them of Cecilia's existence. (*Id.* ¶¶ 106–108.) Plaintiff alleges Defendants violated her constitutional right to privacy by "illegally releasing information, which is held to

5

be confidential and protected by the aforementioned Federal and State laws, to persons with no legal standing to have access to said information at the time of dissemination." (*Id.* ¶ 109.)  The information in Plaintiff's LCCYS file was made public in the medical malpractice complaint and is no longer confidential.  (*Id.* ¶¶ 111–12.)  This information "has since been used against [Plaintiff] in the administration of Cecilia's estate, the [medical malpractice action] and custody proceeding regarding [Plaintiff's] two other children."  (*Id.* ¶ 111.)

Plaintiff avers that "[t]he shortage of staff and overburdened caseworkers have left Defendants without the necessary resources to properly train and/or supervise their employees, agents and servants."  (*Id.* ¶ 129; *see also* ¶¶ 117–127 (allegations regarding LCCYS understaffing).)  Defendants' failure to train and/or supervise their employees "amounts to subjective recklessness for the rights of the children and families, including [Plaintiff], involved with CYS."  (*Id.* ¶ 130.)  The failure to train and/or supervise has led to a violation of Plaintiff's constitutional rights.  (*Id.* ¶¶ 135–36.)

Plaintiff states that

Defendants, their various agents, servants and/or employees, while acting under color of state law, unlawfully, intentionally, unreasonably, maliciously, with deliberate indifference and/or with reckless indifference to [Plaintiff's] civil rights, violated 42 U.S.C.A. § 1983 and deprived the [Plaintiff] of her rights and privileges guaranteed under the Constitution of the United States and laws…by acting as follows:

a.  Violating various Child Protective Services laws;

b.  Attempting to cover up, minimize and ignore the illegal activities of their employees, agents and servants;

c.  Releasing confidential information regarding [Plaintiff] and Cecilia's CYS file

6

to individuals with absolutely no legal standing to have access to said information at the time of dissemination;

d.  Delaying, inadequately and improperly handling the Nin Case, in violation of [Plaintiff's] right to due process;

e.  Delaying, inadequately and improperly handling the Nin Case, in violation of [Plaintiff's] right to be an integral part of [Plaintiff's two older children's] lives;

f.  Violating the requirements of CAPTA;

g.  Having a pattern, custom, policy, or practice that resulted in their illegal and unauthorized dissemination of [Plaintiff] and Cecilia's CYS file;

h.  Having a pattern, custom, policy, or practice that resulted in their failure to properly train and / or establish proper training procedures for their employees and agents;

i.  Failing to train their employees in the context of confidentiality of CYS files;

j.  Staffing non-qualified and incompetent personnel;

k.  Being and /or causing to be inadequately funded and / or staffed so as to create an environment incapable of insuring confidential information is not released to improper persons;

l.  Adhering to a history and custom of being deliberately indifferent to training as to parents' and children's constitutional rights;

m. Failing to implement any policies and / or procedures, and / or failing to properly train various agents, servants and/or employees as to any policies or procedures, to ensure confidential information is not released to improper persons; and

n.  Administering Cecilia's CYS investigation under a provisional state license.

(*Id.* ¶ 139.)

Specifically, LCCYS caseworkers Cave and Wurth contacting Estate Counsel and releasing Plaintiff's confidential file to Estate Counsel violated Plaintiff's right to privacy,

complicated Plaintiff's attempt to regain custody of her older children, led to her exclusion in the administration of Cecilia's estate and led to her being named as a defendant in the medical malpractice action. (*Id.* ¶¶ 140–41.) Additionally, the separation of Plaintiff from her older children violated Plaintiff's "Fourteenth Amendment right to procedural due process" and "substantive due process rights to family integrity and privacy." (*Id.* ¶¶ 142–43, 149.) Plaintiff also alleges Defendants violated various state laws governing Child Protective Services and the federal Child Abuse Prevention and Treatment Act ("CAPTA"). (*Id.* ¶¶ 144–45.)

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . .

8

disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal,* 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal,* 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. Of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Courts may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.   In addition, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  The court may also consider matters of public record in determining whether dismissal is appropriate.  *Sands v. McCormick*, 503 F.3d 263, 268 (3d Cir. 2007).  *Estate of Roman v. City of Newark*, 914 F.3d 789, 796–97 (3d Cir. 2019), reiterated the appropriate scope of review:

> [the] Supreme Court has been clear about the scope of our review, stating we "*must* consider the complaint in its entirety, as well as other sources [we] ordinarily examine when ruling on . . . motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."

*Estate of Roman*, 914 F.3d at 796-97 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added in *Estate of Roman*)).  Matters of which a court

may take judicial notice include "the contents of another Court's docket." *Orabi v. Att'y Gen.*, 738 F.3d 534, 537 (3d Cir. 2014); *see also Nash v. Kenney*, 784 F. App'x 54, 56 n.2 (3d Cir. 2019) (not precedential).  The court may not, however, rely on other parts of the record in making its decision on a motion to dismiss.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV. ANALYSIS

Plaintiff's Third Amended Complaint alleges Defendants violated Plaintiff's and her family's substantive and procedural due process rights under the Fourteenth Amendment and should be held liable pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) based on a failure to train theory.

Defendants seek dismissal with prejudice of Plaintiff's Third Amended Complaint on four grounds. (Doc. 68 at 7.)  First, Plaintiff has not demonstrated a constitutional deprivation committed by a person acting under color of state law.  (*Id.*)  Second, Plaintiff lacks standing to allege a violation of the constitutional right to privacy.  (*Id.* at 10.)  Third, Defendants cannot be held vicariously liable for the actions of their employees, and Plaintiff failed to identify a policy, custom, or deliberately indifferent conduct by Defendants that led to the alleged constitutional violation.  (*Id.*)  Fourth, Plaintiff failed to prove that a policy, custom, or deliberate indifference attributable to Defendants was the moving force behind the alleged constitutional violation.  (*Id.*)

## A. Standing

11

The Court will preliminarily address whether Plaintiff has standing to bring suit for the violation of her and her family's constitutional right to privacy. Defendants argue that the alleged dissemination was only of "*Cecelia's* [sic] records pertaining to her physical injuries and premature death," and that "none of the records directly implicate *Plaintiff.*" (Doc. 68 at 13 (emphasis original).)  Defendant thus argues Plaintiff does not personally have a right to privacy in Cecilia's records and Plaintiff does not have standing to assert a constitutional violation based on the disclosure of Cecilia's records.  (*Id.* at 9.)  In her opposition brief, Plaintiff does not dispute that she lacks standing to bring suit for a violation of the constitutional right to privacy for anyone but herself.  Rather, Plaintiff states that she has standing to bring this claim on her own behalf because Third Amended Complaint "clearly delineates Defendants' illegal dissemination of Kareliz's confidential and privileged CYS file." (Doc. 69 at 12.)  With this acknowledgment and recognition, the Court need not further discuss the standing issue raised by Defendants and will consider Plaintiff's constitutional right to privacy claim only in the context of her own confidential information.  Thus, insofar as Plaintiff alleges that confidential information about her was improperly disclosed to Estate Counsel in violation of her constitutional rights, the Court will proceed with the requisite substantive analysis.

## B.  Constitutional Right to Privacy

Defendants assert that the only constitutionally protected material in the LCCYS file are Cecelia's medical records.  (*See*, *e.g.*, Doc. 68 at 13; Doc. 70 at 4.)  Defendants further

assert that they cannot be liable for the actions of their employees and Plaintiff has not

identified any custom or policy to support municipal liability.  (Doc. 68 at 14-21.)  Plaintiff

maintains that "although Kareliz's CYS file did in fact contain Cecelia's medical records,

those records were just a portion of Kareliz's private, sensitive and confidential information

within the CYS file."  (Doc. 69 at 14.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of

her rights as protected by the Constitution and laws of the United States and that the

violation was committed by a person acting under color of state law.  *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 does not create any substantive rights, but

"merely provides remedies for deprivations of rights established elsewhere."  *City of*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432, 85 L. Ed. 2d 791 (1985).

Plaintiff has not named any specific caseworkers or LCCYS employees as

defendants.  Rather, the only defendants are LCCYS and Luzerne County.

When a plaintiff alleges a local government is responsible for the deprivation of a

constitutional right by its employee, she must satisfy the requirements identified in *Monell v.*

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  It is well-settled that "a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell,*

436 U.S. at 691.  Thus, a local government cannot be held liable for "an injury inflicted

solely by its employees or agents." *Id.* at 694.  Liability exists only where the "execution of a

government's policy or custom…inflicts the injury." *Id.*

To establish a *Monell* claim, the plaintiff must allege: "(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

In *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575 (3d Cir. 2003), the Court of Appeals for the Third Circuit discussed when an individual state actor's actions can be attributed to a governing authority or municipality who employs the individual.  The Circuit Court first noted that the employer "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability. *Id.* at 583 (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  For the employer to be liable, the plaintiff must provide evidence that there was a relevant policy or custom, and that the policy caused the constitutional violation they allege.  *Id*. at 583-84 (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404 (1997)).  *Natale* then explained the established tenet that not all state action rises to the level of a custom or policy:

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Kneipp v. Tedder,* 95 F.3d 1199, 1212 (3d Cir.1996) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bryan County,* 520 U.S. at 404, 117 S.Ct. 1382.

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." [*Bd. Of Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397,] 417 (1997) (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg* [*v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

*Natale*, 318 F.3d at 584.  Even without evidence that the government entity had an affirmative policy or custom on the matter at issue, evidence that the government entity "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights" would suffice.  *Id.*

Where there is no express policy on the pertinent issue and the plaintiff is therefore attempting to prove that one official's misconduct was not an isolated occurrence, allegations of a single act of constitutional violation do not show a custom or policy.  *See*, *e.g.*, *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).  As summarized in *Brown v Pittsburgh*, 586 F.3d 263 (3d Cir. 2009),

the Supreme Court has explained [that], "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing ... municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion). The rationale for this rule is straightforward. "[A] single incident of police misbehavior by a single policeman is insufficient as sole support for an inference that a municipal policy or custom caused the incident." *Id.* at 832, 105 S.Ct. 2427 (Brennan, J., concurring);see id. at 822–24, 105 S.Ct. 2427 (plurality opinion) (contrasting the facially unconstitutional, explicit policy at issue in *Monell*, only one application of which was sufficient to trigger municipal liability, to fact patterns that present no such explicit policy, where "more proof than the single incident will be necessary" to establish a causal connection between the incident and some municipal policy); *see also Monell*, 436 U.S. at 691, 98 S.Ct. 2018 (explaining that municipal liability can exist even when "discriminatory practices" are "not authorized by written law," but only if such practices are sufficiently "permanent and well settled as to constitute a 'custom or usage' with the force of law" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970))).

*Brown*, 586 F.3d at 292-93.

The deliberate indifference standard is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 410 (1997). Generally, to prove deliberate indifference, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). A pattern of violations puts municipal decisionmakers on notice that a new program is necessary and 'their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish…deliberate indifference.'" *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting

16

*Brown*, 520 U.S. at 407).  Single-incident liability is "rare," but possible where the

"unconstitutional consequences of failing to train could be so patently obvious that a city

could be liable under § 1983 without proof of a pre-existing pattern of violations."  *Connick*,

563 U.S. at 64.  The Supreme Court offered as an example of single-incident liability the

hypothetical failure to train armed police officers on the use of deadly force.  *Harris*, 489

U.S. at 390 n.10.

   This legal framework means that, to state a claim for liability,  Plaintiff's Third

Amended Complaint must allege sufficient facts to show that it is plausible that she

possessed a constitutional right to privacy in the released records, she was deprived of that

right, Defendants had a policy or custom that amounted to deliberate indifference to her

constitutional right to privacy in the records, and the policy was the moving force behind the

constitutional violation.[1]  *Vargas*, 783 F.3d at 974.

### 1. Constitutional Right to Privacy in Released Records

   The parties dispute whether the released information contained information about

Plaintiff which is entitled to constitutional protection.  Defendants maintain that the

constitutionally protected information pertains only to Cecilia.  (Doc. 68 at 13; Doc. 70 at 4.)

Plaintiff contends that the released file also contained constitutionally protected information

as to her.  (*See*, *e.g.*, Doc. 69 at 13.)

---

[1] The parties treat the liability of the two named Defendants as being coextensive.  (*See*, *e.g.*,
Docs. 65, 67-70.)  The Court thus treats them the same for purposes of the analysis set out in the text.

The Third Circuit has held medical records and information falls into a zone of privacy entitled to protection under the Fourteenth Amendment. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980); *see also Whalen v. Roe,* 429 U.S. 589, 599–600 (1977). The "individual interest in avoiding disclosure of personal matters" is included in the Fourteenth Amendment's protection of the right to privacy. *Westinghouse*, 638 F.2d at 577 (quoting *Whalen,* 429 U.S. at 599–600). "There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection." *Id.; see also Malleus v. George,* 641 F.3d 560, 565 (3d Cir. 2011), *as amended* (June 6, 2011) (recognizing that three categories of information are protected in the Third Circuit: "sexual information, medical information, and some financial information" (internal citations omitted)). In *Westinghouse,* the Third Circuit explained that "medical records and information stand on a different plane than other relevant material." *Westinghouse*, 638 F.2d at 577. Consequently, while medical information falls within the protection of the Fourteenth Amendment, other confidential information related to a child abuse investigation—without more details about the contents of the information—is not constitutionally protected. *See Craven v. Leach*, 647 F. App'x 72, 75 (3d Cir. 2016) (affirming dismissal where plaintiff alleged caseworker disclosed unspecified confidential information to third party during child abuse investigation).

This relevant authority indicates that, to the extent the disseminated information contained Plaintiff's own medical records and information, she may have been subject to a

constitutional deprivation of privacy.  The Third Amended Complaint imprecisely alleges that

the LCCYS file contained Plaintiff's confidential information, but it does not identify exactly

what information relating to Plaintiff was contained within it.  "CYS files contain extremely

sensitive and confidential information concerning children and their families.  CYS's file on

Kareliz contained reports including medical records, identifying information, and information

about Cecilia and Cecilia's siblings."  (Doc. 65 ¶¶ 25–26).  In her opposition brief, Plaintiff

states that "Kareliz's file contained significant confidential information concerning Kareliz,

and not just Cecilia's medical records."[2]  (Doc. 69 at 13.)  Where Plaintiff's Third Amended

Complaint actually specifies protected medical information contained in the LCCYS file, it is

medical information pertaining to Cecilia.  (*See, e.g.,* Doc. 65 ¶ 104 ("…information in her

CYS file, including but not limited to, Cecilia's medical records or the autopsy report.").)

Plaintiff's opposition brief does not clarify ambiguous statements made in her Third

Amended Complaint: Plaintiff had the opportunity to clarify what type of confidential records

---

[2] In her brief, Plaintiff discusses the Pennsylvania statutory and regulatory recognition of the importance of the confidentiality of CYS files.  (Doc. 69 at 12-13 (citing 23 Pa. C.S. § 6339; 55 Pa. Code § 3130.44).)  While the conduct complained of in this case may not be consistent with the identified Pennsylvania provisions, violations of Pennsylvania statutory and regulatory provisions are not at issue here.  The disclosure of Plaintiff's unspecified non-medical records and information related to the investigation is not necessarily protected by the Fourteenth Amendment. *See Craven*, 647 F. App'x at 75. Moreover, district courts in the Third Circuit have held that while CAPTA mandates child abuse and neglect reports and records remain confidential, it does not give rise to a Section 1983 claim. *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 648 (E.D. Pa. 1999) ("CAPTA clearly does not create a private right of action under 42 U.S.C. § 1983"); *Baby Neal v. Casey*, 821 F. Supp. 320, 329 (E.D. Pa. 1993) ("[CAPTA] does not give rise to an enforceable private right of action under 42 U.S.C. § 1983"), *aff'd on recons.*, No. CIV.A. 90-2343, 1995 WL 728589, at *1 (E.D. Pa. Dec. 7, 1995); *Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 496–97 (D.N.J. 2000) (collecting cases). *But see Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 684 (S.D.N.Y. 1996) (relying on *Jeanine B. ex rel. Blondis v. Thompson*, 877 F.Supp. 1268 (E.D. Wis. 1995)) ("[P]laintiffs are entitled to claim alleged violations of CAPTA pursuant to § 1983"), *aff'd sub nom.*, 126 F.3d 372 (2d Cir. 1997)).

personal to her were contained in the released file, yet she did not do so.  However, insofar as Plaintiff's ambiguous pleading style may be seen to create a factual question regarding whose medical information was allegedly disclosed—Cecilia's or Plaintiff's—the Court will assume *arguendo* that she has pled factual allegations sufficient for the Court to find, at this stage of the proceedings, that the released records contained medical information specific to her which could give rise to a Fourteenth Amendment privacy claim.  With this threshold assumption, the Court will turn to Defendants' argument that Plaintiff has failed to show that Defendants can be liable for the harm alleged.  (Doc. 68 at 14-21.)

Given a threshold assumption that the released records contained constitutionally protected information, the Court must determine whether Plaintiff has pled facts sufficient to support a claim that Luzerne County Children and Youth Services and/or Luzerne County had a policy or custom that amounted to deliberate indifference to her constitutional right to privacy in the records, and the policy was the moving force behind the constitutional violation.  *Id.*

### 2. *Custom or Policy Related to Confidentiality*

Defendants assert that Plaintiff's Third Amended Complaint fails to demonstrate a policy, custom, or indifference attributable to them.  (Doc. 68 at 19.)  In her opposition brief, Plaintiff contests Defendants' conclusion that she has failed to set forth sufficient allegations to permit a finding of institutional liability and states that "when viewed all together and construed in a manner most favorable to Kareliz, the claims in her Third Amended Complaint sufficiently plead a plausible failure to train claim."  (Doc. 69 at 14.)  Plaintiff

focuses her argument on Defendants' failure to provide adequate training of LCCYS

personnel based on the third scenario set out in *Natale*, i.e., where

> "the policymaker has failed to act affirmatively at all, [though] the need to take
> some action to control the agents of the government 'is so obvious, and the
> inadequacy of existing practice so likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to have been deliberately
> indifferent to the need," *Natale*, 318 F.3d at 584.

(Doc. 69 at 16.)  Given Plaintiff's narrowed focus of her § 1983 claim, the Court will review

authority relevant to the issue now presented.

"[A] municipality's failure to properly train its employees and officers can create an

actionable violation . . . under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir.

1997); *see also Estate of Roman*, 914 F.3d at 798 (citing Reitz, 125 F.3d at 145). The

Supreme Court considered the contours of a municipality's liability under this theory in *City

of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).  The Court held that "the inadequacy of

police training may serve as the basis for § 1983 liability only where the failure to train

amounts to deliberate indifference to the rights of persons with whom the police come into

contact." *Id.* at 388.  *City of Canton* explained that

> this rule is most consistent with our admonition in *Monell*, 436 U.S., at 694, 98
> S.Ct., at 2037, and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445,
> 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only
> where its policies are the "moving force [behind] the constitutional violation."
> Only where a municipality's failure to train its employees in a relevant respect
> evidences a "deliberate indifference" to the rights of its inhabitants can such a
> shortcoming be properly thought of as a city "policy or custom" that is actionable
> under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati*, 475
> U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986)
> (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only
> where—a deliberate choice to follow a course of action is made from among

various alternatives" by city policymakers. *See also Oklahoma City v. Tuttle*, 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality— a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

> *Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton*, 489 U.S. at 388–90. The Court of Appeals for the Third Circuit reiterated

*City of Canton's* directive that, in some instances, "the need for training can be said to be so

obvious, that failure to do so could properly be characterized as deliberate indifference to

constitutional rights," adding that this may be so "even without a pattern of constitutional

violations."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of*

*Canton*, 489 U.S. at 390 n.10).  To demonstrate the "moving force" element of the *Monell*

test, "'the identified deficiency in a city's training program must be closely related to the

ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the

constitutional violation.'" *Id.* at 222 (quoting *City of Canton,* 489 U.S. at 391 (alterations in original).

In *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999), the Circuit Court considered a § 1983 failure to train claim in the context of a motion to dismiss, focusing on *City of Canton's* deliberate indifference requirement and considering guidance from other courts, including the Second Circuit's discussion of the issue in *Walker v. City of New York*, 974 F.2d at 293 (2d Cir. 1992). *Carter* discussed the three-part test formulated in *Walker*:

> in order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

*Carter*, 181 F.3d at 357 (citing *Walker*, 974 F.2d at 297–98).

Defendants first assert that it is implausible that LCCYS had a "policy whereby employees were to solicit the involvement of private attorneys to set up estates." (Doc. 68 at 16.) They add that

> disclosure of confidential information is a direct violation of LCCYS policy and custom. Neither the Child Protective Services Act nor the Juvenile Act, the policies to which caseworkers must adhere, permit meeting with private attorneys, turning over confidential client records or assisting with Estate creation. Moreover, the list of those to whom such records may be provided is narrowly circumscribed. In fact, violation of the policy regarding release of records is a criminal act.

(Doc. 68 at 16.) After concluding that Plaintiff has not identified a policy or custom that directs such actions, Defendants address Plaintiff's failure-to-train basis for her claim, stating that Plaintiff

> notably fails to include any facts regarding a pattern of similar constitutional
> violations that would have put Luzerne County and/or LCCYS on notice of a
> deficiency in their supervisory/training protocols.  Moreover, Plaintiff did not
> show how her alleged injuries were the "known" or "patently obvious" result of
> the alleged staffing problem and/or failure to train.  Therefore, because Plaintiff
> failed to demonstrate a policy, custom or indifference attributable to Moving
> Defendants led to the deprivation of her constitutional rights, Plaintiff's claims
> against Moving Defendants must be dismissed.

(Doc. 68 at 19.)

In support of her failure to train claim, Plaintiff asserts the following:

> Kareliz's CYS file contained her private, sensitive, and confidential information.
> Any release of said information to Attorney Aikens and/or Attorney Bigda prior
> to the Estate being opened and the attorneys being hired by the Estate, would
> be in clear violation of, and with deliberate indifference to, Kareliz's
> constitutional right to privacy.  Contacting two personal injury attorneys and
> providing them with Kareliz's CYS file, without her consent or knowledge,
> reflects a need for training that is "so obvious, and the inadequacy of existing
> practice so likely to result in the violation of constitutional rights, that the
> policymaker can reasonably be said to have been deliberately indifferent to the
> need." *Natale*,318 F.3d at 584.

(Doc. 69 at 23-24.)

In their reply brief, Defendants allege that Plaintiff failed to identify a pattern of similar

violations or to demonstrate how her alleged injuries were the 'patently obvious' result of

Defendants' purported understaffing and/or failure to train." (Doc. 70 at 10.)  More

specifically, Defendants argue that

> Plaintiff failed to describe how Defendants' training programs were deficient
> and/or present a superior alternative to same.  Simply put, the idea that either
> understaffing and/or a failure to train could have caused LCCYS caseworkers
> to meet attorneys with confidential files and release them without authorization
> for the purpose of launching a medical malpractice action on behalf of Cecelia
> Nin, ultimately causing Plaintiff's purported injuries, or that said injuries could
> have been prevented by a full staff or superior training programs, flies in the

face of common sense. No amount of training and/or staffing would prevent two
bad actors from, intentionally and without warning, meeting with attorneys and
releasing confidential case files in direct violation of the law.

(Doc. 70 at 10.)

The Court concludes that Plaintiff's claim that Defendants failed to train and/or

supervise employees regarding the confidentiality of medical records cannot support a

cause of action under 42 U.S.C. § 1983.  Regarding a policy or custom related to her

constitutional right to privacy in the LCCYS records, Plaintiff specifically alleges the

following in her Third Amended Complaint: Defendants had "a pattern, custom, policy, or

practice that resulted in the illegal and unauthorized dissemination of Kareliz and Cecilia's

file" (Doc. 65 ¶ 139(g)); Defendants had "a pattern, custom, policy, or practice that resulted

in their failure to properly train and / or establish proper training procedures for their

employees and agents" (*id.* ¶ 139 (h)); Defendants "[f]ail[ed] to train their employees in the

context of confidentiality of CYS files" (*id.* ¶ 139 (i)); Defendants "[a]dher[ed] to a history and

custom of being deliberately indifferent to training as to parents' and children's constitutional

rights" (*id.* ¶ 139(l)); and Defendants "fail[ed] to implement any policies and/or procedures,

and/or fail[ed] to properly train various agents, servants, and/or employees as to any

policies or procedures, to ensure confidential information is not released to improper

persons" (*id.* ¶ 139(m)).  Plaintiff's Third Amended Complaint (Doc. 65) also contains the

following averments related to training and supervising LCCYS staff: "The understaffing of

CYS left CYS incapable of properly training and/or supervising their employees, agents and

servants regarding the confidentiality of CYS files, including [Plaintiff's]" (*id.* ¶ 135); "The

25

conduct as set forth above demonstrates a failure to properly train Defendants' employees, agents and servants on breaching confidentiality laws, rules and regulations" (*id.* ¶ 163).

As set out above, a municipality's failure to train its employees is cognizable as a "policy or custom" under *Monell*, but the failure "must reflect deliberate indifference to the constitutional rights of its inhabitants." *City of Canton*, 489 U.S. at 392. It is not enough for the plaintiff to show one particular employee was "unsatisfactorily trained" or that the conduct could have been avoided if an employee had "better or more training." *Id.* at 390–91. The Court cannot engage in an "endless exercise of second-guessing municipal employee-training programs." *Id.* at 392.

In terms of the three *Carter* factors upon which the Court focuses at the motion to dismiss stage, Plaintiff has not made the requisite plausible showing. First, Plaintiff presents no allegations or argument that the municipal policymakers knew that employees would confront the particular situation presented here. *See Carter*, 181 F.3d at 357. In this case, allegations contained in the Third Amended Complaint and Plaintiff's brief indicate that two LCCYS staff members acted independently in providing information to two attorneys who had no legal standing to have access to the information. (*See, e.g.*, Doc. 65 ¶139(d)).) Plaintiff acknowledges that Pennsylvania statutory and code provisions prohibited the two staff members who disseminated the information from doing so. *(See Doc. 65* ¶¶ 92, 93, 95, 96, 98, 100 *(*citing 23 Pa. C.S. §§ 6339, 6340; 55 Pa. Code §§ 3130.44, 3490.91, 3490.102).) Not only is a person who violates the confidentiality provisions subject to dismissal, 55 Pa. Code § 3490.101, but

a person who willfully releases or permits the release of data or information contained in the pending complaint file, the Statewide Central Register or the county agency records, to persons or agencies not permitted by this chapter to receive this information shall be guilty of a misdemeanor of the third degree.

55 Pa. Code § 3490.102.  Given these prohibitions and penalties in place, municipal policymakers would not have reason to expect that employees would contemplate engaging in prohibited acts by reaching out to private attorneys and turning over confidential records to them.  No allegations in the Third Amended Complaint (Doc. 65) suggest otherwise.

As to the second *Carter* factor, no allegations or evidence suggest that "the situation involves a difficult choice or a history of employees mishandling," 181 F.3d at 357.  Based on the statutory and code prohibitions and penalties in place governing the release of family case records, the caseworkers here clearly acted outside the law (*see, e.g.*, 23 Pa. C.S.A. § 6340(a), 55 Pa. Code § 3130.44(d)) when they released information to private attorneys.  Thus, it should not have been a "difficult choice" for LCCYS workers to refrain from the behavior in which they engaged.  Further, the lack of any allegation showing a history of LCCYS employees engaging in improper dissemination of information in the manner presented here, or in any manner, is indicative of the absence of a history of employees mishandling such information.

Finally, while the wrong choice by an employee, i.e., improperly disseminating confidential information in the manner presented here, may theoretically "frequently cause deprivation of constitutional rights" given the nature of information contained in LCCYS files,

181 F.3d at 357, the single instance alleged counsels against making any finding as to frequency.

Thus, this is not a case where, because of "the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Liability on this basis "requires a showing of the policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997); *see also Robinson v. Fair Acres Geriatric Center*, 722 F. App'x 194, 199 (3d Cir. 2018) (not precedential) (citing *Bryan Cty.*, 520 U.S. at 407) (although plaintiff alleged only generally that training was inadequate, plausible failure to train claim stated where plaintiff alleged sufficient number and character of deficiency claims issued to the defendant by state regulators). As noted above, Plaintiff presents no allegations of other instances of similar behavior. She presents no allegations similar to those found adequate in *Robinson* in that no record of deficiencies is alleged. Nor is this a situation where "the need for training can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223. This is a single instance of two LCCYS employees independently engaging in conduct in violation of Pennsylvania state law with no indication that they were unaware of the legal prohibitions governing their actions. No allegations

suggest that the need for additional training could have been obvious prior to their actions given existing prohibitions and penalties regarding the dissemination of confidential information and there are no allegations that similar violations preceded the two employees' prohibited conduct.

The foregoing discussion indicates that this is a case where "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, [because] proof of the incident [does not] include[ ] proof that it was caused by an existing ... municipal policy, which policy can be attributed to a municipal policymaker.'" *Brown*, 586 F.3d at 292 (quoting *City of Oklahoma City*, 471 U.S. at 823–24).[3]  Further, no allegations suggest that this is the "rare" case which gives rise to single-incident liability because the "unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.

In sum, Plaintiff presents no allegation that Defendants had notice that their training program was failing to adequately prepare employees regarding confidentiality.  Her assertion that "[t]he 2017 State of the Child specifically states that CYS employees, agents and servants including, but not limited to CYS caseworkers, 'receive inadequate training'"

---

[3] Plaintiff's opposition brief sets out the elements of single-incident liability without clarifying how this case satisfies the elements. (Doc. 69 at 15).

(Doc. 65 ¶ 125) points only to a statewide generic assessment regarding staff training.[4] Plaintiff neither alleges that the "inadequate training" to which the report refers is related to confidentiality, nor that the report somehow gave notice to Defendants that their training on the issue was deficient.  Plaintiff fails to plead that there was any pattern of unconstitutional disclosures similar to Plaintiff's case that would have put Defendants on notice of a deficiency in their training program.  Plaintiff relies solely upon one unconstitutional disclosure of her own file, involving two actors below the policymaking level.  Finally, the Third Amended Complaint pleads no facts to support single-incident liability.  Although Plaintiff alleges that "[t]he harm and damages caused to [Plaintiff] were a foreseeable and direct consequence of the illegal and deliberate actions and omissions of Defendants as described herein" (Doc. 65 ¶ 148), Plaintiff's conclusory assertion that the harm was "foreseeable" does not support a plausible claim of deliberate indifference to her constitutional rights.  The risk of an employee disclosing constitutionally-protected confidential information must be a "patently obvious" result of Defendants' current training program. *Connick*, 563 U.S. at 64.

The Court recognizes that prior to discovery, a plaintiff is not expected to be able to precisely identify a particular policy and explain exactly how that policy caused her injury.

---

[4] "State of the Child" ("A look at the strengths and challenges of Pennsylvania's child-welfare system and the safety of at-risk children") is a special report by Auditor General Eugene DePasquale issued in September 2017.  https://www.paauditor.gov/Media/Default/Reports/RPT_CYS (last visited October 9, 2020).

*Carter*, 181 F.3d at 357–58. Nevertheless, many of Plaintiff's assertions are no more than

formulaic recitations of the elements of a cause of action. (*See, e.g.*, Doc. 65 ¶ 139.)

Without alleging sufficient facts to support her claim, Plaintiff asks the Court to assume that

because two LCCYS caseworkers allegedly disclosed Plaintiff's constitutionally-protected

information, they must have acted pursuant to Defendants' policy or Defendants' failure to

train its employees. To accept this assumption would be antithetical to the directive that a

pleading must show "more than a sheer possibility" that a defendant has acted in the

unlawful manner alleged, *Connelly*, 809 F.3d at 786, the relevant allegation here being that

Defendants failed to train the individual employees who disseminated Plaintiff's confidential

information such that, under *Monell*, Defendants are liable for the wrongs done by the

individuals. The Court, therefore, will grant Defendants' motion to dismiss Plaintiff's claim

that her constitutional rights were violated when her confidential information was disclosed

to a third party.

## B.  Constitutional Rights to Family Integrity and Procedural Due Process

Defendants assert that Plaintiff's claim that they deprived Plaintiff of her right to raise

her children is without a legal or factual basis. (Doc. 68 at 21.) Defendants maintain that,

substantively, the right is not absolute and the facts of the case show that LCCYS acted

appropriately in intervening to protect Plaintiff's children. (Doc. 68 at 22-23.) Procedurally,

Defendants contend that "Plaintiff had a full and fair opportunity to represent her interests

during the dependency proceedings." (*Id.* at 23.) Plaintiff responds that she "clearly

alleges" a substantive due process claim based on violation of her right to familial integrity

because of Defendants' actions during their investigation and failure to return Plaintiff's children to her for more than six years. (Doc. 69 at 22.) Plaintiff does not discuss procedural due process in her opposition brief. (*See* Doc. 69.) Therefore, the Court will focus on Plaintiff's substantive due process right to familial integrity.[5]

The Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The Third Circuit has explained that this liberty interest in familial integrity is not absolute, but "limited by the compelling governmental interest in the protection of children—particularly where the children need to be protected from their own parents." *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). The removal of a child from the custody of her parent may be justified, "even where later investigation proves no abuse occurred." *Id.* at 1126. However, "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in

---

[5] A review of the Third Amended Complaint indicates that Plaintiff failed to allege facts sufficient to make out a procedural due process claim. Pursuant to the Due Process Clause of the Fourteenth Amendment, the government cannot interfere in familial relationships "unless the government adheres to the requirements of procedural and substantive due process." *Croft*, 103 F.3d at 1125. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d Cir. 1999) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). As discussed later in the text, Plaintiff does not challenge the constitutionality of the procedure followed by LCCYS in suspending child custody in more than vague conclusory terms. Likewise, Plaintiff failed to identify what procedures needed to be followed in her case, whether LCCYS failed to follow such procedures, or in what ways the procedure to which she was subject was deficient. Without any relevant factual allegations, the Court cannot assume based on Plaintiff's conclusory assertions that she was not afforded the procedures owed to her throughout the investigation.

imminent danger of abuse." *Id.* at 1126. Thus, the Third Circuit has emphasized that a court's focus "is whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [parents'] rights as [the child's] parents. Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power." *Id.* An allegation of mere negligence or even deliberate indifference is insufficient to raise a substantive due process violation; the defendant's actions must "reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375–76 (3d Cir. 1999).

Defendants assert that, by Plaintiff's own admission, "she lost custody over her children due to the suspicion of abuse involving Cecelia [sic]." (Doc. 68 at 22 (citing Doc. 65 ¶ 67).) They add that, based on the suspicions regarding Cecilia, LCCYS had a statutory obligation to intervene to protect Plaintiff's remaining children and that they had a further obligation to do so according to the statutory provision which requires judicial authorization for a county agency worker to take custody of a child. (Doc. 68 at 23 (citing 55 Pa. C.S. § 3490.55, 23 Pa. C.S. § 6315(a)(4)).) Defendants further maintain that

> protections are built in to ensure fairness and to preserve the constitutional and other legal rights of both the dependent child and their parents. Toward this end, the Rules require the Court to address each party's right to counsel in all proceedings. Thus, Plaintiff had a full and fair opportunity to represent her interests during the dependency proceedings.

(Doc. 68 at 23 (citing Pa. R.J.C.P. 1151(E)).)

Plaintiff does not address these averments in her opposition brief. (*See* Doc. 69.)

Regarding her "fundamental right to familial integrity," Plaintiff maintains that Defendants

denied her

> the ability to be with the Children throughout the pendency of CYS's unfounded investigation, causing her to suffer from the damage of her family unit for more than six years, as well as mental anguish and harm to her reputation. Kareliz sufficiently alleges how the Defendants are liable in this case. Therefore, Kareliz has stated a valid claim for violation of her substantive due process rights.
>
> Further, the Defendants' actions in failing and refusing to return the Children, also violates Kareliz's substantive due process rights. *Doe v. Fayette County Children and Youth Servs.*, Civ. A. No. 8-823, 2010 WL 4854070, at *10-11 (W.D. Pa. Nov. 22, 2010). A policy that severs contact between parent and child without a finding of imminent danger shocks the conscience and violates substantive due process. *Gedrich v.Fairfax County Dept.of Fam.Services*, 282 F.Supp.2d 439, 463 (E.D. Va. 2003). Here, the refusal to return the Children to Kareliz for more than six years while the Defendants completed their investigation, which resulted in no findings of abuse against Kareliz, shocks the conscience, and, thus, violates her substantive due process rights under the Fourteenth Amendment. It is clear from Kareliz's Third Amended Complaint that one could reasonably infer from the more than six year removal of Kareliz's Children, where an investigation revealed no evidence of abuse or neglect by Kareliz, that Defendants were "deliberately indifferent" and failed to train their employees in the conduct of child-removal investigations and formal proceedings.

(Doc. 69 at 22-23.)

Plaintiff's Third Amended Complaint contains the following relevant allegations:

Defendants deprived Plaintiff of her constitutional rights by "[d]elaying, inadequately and

improperly handling the Nin Case, in violation of Kareliz's right to due process" (Doc. 65 ¶

139(d)); and Defendants deprived Plaintiff of her constitutional rights by "[d]elaying,

inadequately and improperly handling the Nin Case, in violation of Kareliz's right to be an

integral part of Reina and Faviyan's lives (*id.* ¶ 139(f)).  Plaintiff more specifically alleges

that

> the continued separation of Faviyan and Reina from Kareliz by CYS and the
> refusal of CYS to otherwise permit Kareliz to have contact and continuous
> familial relations and have a parental bond with Faviyan and Reina when they
> knew that they had no evidence that Kareliz had ever abused or neglected
> Faviyan or Reina further violated Kareliz's Fourteenth Amendment right to
> procedural due process[; and]  the removal of Faviyan and Reina from Kareliz's
> home without reason to believe that Faviyan and Reina were in imminent
> danger, the refusal to thereafter return Faviyan and Reina to Kareliz's home for
> more than five years despite obtaining no additional evidence during that time
> that Faviyan and Reina were in any danger, and the refusal to permit Kareliz to
> have continued contact with Faviyan and Reina, violated Kareliz's substantive
> due process rights to familial integrity and privacy, denying Kareliz valuable
> bonding time with Faviyan and Reina that she can never get back.

(*Id.* ¶¶ 143, 144.)

Whether Plaintiff's Third Amended Complaint adequately alleges that her liberty

interest in familial integrity was violated is a close call.  The Court will consider this claim in

two parts: the initial removal of the children from her custody and the subsequent period of

dependency.  As to the initial period, Plaintiff has not pled facts which undermine averments

that the initial removal of custody was based on reasonable and articulable evidence giving

rise to an objectively reasonable suspicion of abuse.  According to Plaintiff's Third Amended

Complaint, Defendants' decision to allege suspected abuse and petition for dependency of

all three children was based on the "diagnostic studies and physical examinations"

performed when Cecilia was taken to the hospital on January 4, 2013, because she was

unresponsive.  (Doc. 65 ¶¶ 12–13.)  Plaintiff's Complaint states that Cecilia's autopsy report

later revealed "findings of multiple healing bilateral rib fractures," which "were evident on the

pre-mortem x-rays obtained on December 28, 2012." (*Id.* ¶¶ 18–19.) The autopsy also

revealed "fractures of the bilateral forearms" and listed the cause of death as "blunt force

trauma to the head." (*Id.* ¶ 18.) Thus, though allegations in the Third Amended Complaint

conclusorily state that LCCYS improperly handled Plaintiff's case and Faviyan and Reina

were improperly removed from her home, the removal of Cecelia's surviving siblings based

on diagnostic findings and Cecelia's autopsy report cannot be construed to "shock[] the

conscience," *Miller*, 174 F.3d at 376, such that liability would attach even when the

allegations are construed in the light most favorable to Plaintiff.

As to the subsequent period of dependency, Plaintiff provides conclusory assertions

regarding ongoing custody considerations. She generally asserts that

> the refusal to return the Children to Kareliz for more than six years while the
> Defendants completed their investigation, which resulted in no findings of
> abuse against Kareliz, shocks the conscience, and, thus, violates her
> substantive due process rights under the Fourteenth. It is clear from Kareliz's
> Third Amended Complaint that one could reasonably infer from the more than
> six year removal of Kareliz's Children, where an investigation revealed no
> evidence of abuse or neglect by Kareliz, that Defendants were "deliberately
> indifferent" and failed to train their employees in the conduct of child-removal
> investigations and formal proceedings.

(Doc. 69 at 22-23.)

More specifically, Plaintiff alleges she has "done everything that has been required of

her by CYS in order for her to regain custody of [the older children]." (Doc. 65 ¶ 59.)

However, Plaintiff does not state what was required of her or how and when she complied.

Plaintiff alleges that "CYS has thrown road blocks at her with every chance they had

through various delays, causing [Plaintiff] to spend money to litigate matters in Court and by

outright violating Court orders." (*Id.* at ¶ 60.)  Plaintiff again provides no facts regarding what these "road blocks" were, whether and/or why they were unjustified, what court orders were violated and the impact of such violations, or how any of LCCYS's actions would shock the conscience.  Thus, Plaintiff presents conclusory assertions in support of her claim that Defendants violated her constitutional right to familial integrity.

Plaintiff's pleading style and argument are perplexing because facts which could give rise to a plausible claim that Plaintiff's right to familial integrity was violated were within Plaintiff's control before she filed her initial complaint and throughout the course of this litigation.  As discussed above, Plaintiff knows what was required of her to regain custody of her children, she knows how she complied with the requirements, and she knows the details of LCCYS's post-compliance conduct.  Further, Plaintiff must know what "road blocks" were placed in her way and when the complained-of conduct occurred.  She also knows how and when LCCYS violated Court orders.  Yet, Plaintiff provides not a single factual detail related to any of these conclusory allegations despite having been given multiple opportunities to do so.

The Court also finds it significant that Plaintiff fails to acknowledge and address the ongoing judicial aspect of decisions regarding the appropriate custody of Reina and Faviyan. *See supra* p. 33.  Contrary to her assertion that "Defendants, by and through their various agents, servants, and/or employees, unilaterally continued separation of the Children from Kareliz by CYS and the refusal of CYS to otherwise permit Kareliz to regain custody and continuous familial relations and have a parental bond with the Children" (Doc.

69 at 24), the State Court's statutorily mandated involvement in dependency and custody matters precludes a finding that LCCYS acted "unilaterally" in deciding the appropriate custody for Reina and Faviyan.

From the Third Amended Complaint, the Court knows that State Court proceedings took place regarding the care, custody, and control of Plaintiff's children: LCCYS petitioned the State Court for dependency of Plaintiff's three children alleging suspected abuse; the State Court granted LCCYS's petition and directed that the Children be removed from Plaintiff's care, custody and control and be placed into foster care; after Cecilia's death, LCCYS continued to handle the case with regard to Plaintiff's two older children who were placed in foster care. (Doc. 65, at ¶¶ 12–17.) Thus, the removal and placement of Plaintiff's children were under the ultimate control of the State Court.

As noted in the margin, Plaintiff does not identify procedures which should have been followed and were not. *See supra* n.5. Plaintiff does not challenge Pennsylvania's dependency procedure, she does not allege that she was not given an opportunity to be heard at a dependency hearing, and she does not challenge any Court determination regarding the custody of her children during the time they were dependent.

These considerations point to a lack of plausibility in Plaintiff's claim that her constitutional right to family integrity was violated. However, taking as true, as the Court must at this stage of the proceedings, Plaintiff's assertions that LCCYS "had no evidence that Kareliz had ever abused or neglected Faviyan or Reina" (Doc. 65 ¶ 142) and Plaintiff was reunited with her children after six years "with no finding of abuse" against her (*id*. ¶ 68;

*see also* Doc. 69 at 22-23), the duration of the separation of Plaintiff and her children and alleged lack of findings supporting the separation are troubling. Thus, in an abundance of caution, the Court will assume for purposes of this analysis that Plaintiff has pled a plausible claim that she was deprived of her constitutional right to familial integrity for the period following the initial removal of Reina and Faviyan.

With this assumption, the questions remain whether Defendants had a policy which "amount[ed] to deliberate indifference" to her constitutional right to familial integrity and whether the policy was the "moving force behind the constitutional violation." *Vargas,* 783 F.3d at 974. In her opposition brief, Plaintiff states that "Defendants were 'deliberately indifferent' and failed to train their employees in the conduct of child-removal investigations and formal proceedings." (Doc. 69 at 23.) She also states that "it is clearly plausible that the injury claimed by Kareliz, including . . . continued interference with custody of the Children, would have been avoided had the employees and/or agents been trained under a program that was not deficient." (*Id.* at 24.) Plaintiff further avers that discovery is needed to show that she can satisfy the requirements of a *Monell* claim. (Doc. 69 at 24.)

On the current record, the Court cannot discount Plaintiff's assertion that discovery is needed to show that she can satisfy the elements of *Monell* liability on the failure to train basis. Therefore, despite the glaring shortcomings of Plaintiff's Third Amended Complaint and thin arguments presented in her opposition brief, the Court will deny Defendant's Motion to Dismiss Plaintiff's substantive due process claim based on the claimed violation of

her constitutional right to familial integrity for the period following the initial removal of Reina

and Faviyan from her custody.

## V. CONCLUSION

For the foregoing reasons Defendants' Motion to Dismiss (Doc. 67) will be granted in

part and denied in part.  The Motion will be granted as to Plaintiff's claim for procedural due

process, her claim for substantive due process based on deprivation of the right to

confidentiality in disclosed records, and her claim for substantive due process based on

deprivation of the right to familial integrity for the initial removal of her children from her

custody.  These claims will be dismissed with prejudice based on the Court's previous

advisement that the filing of a third amended complaint would be Plaintiff's "final opportunity

to set forth a properly pleaded Complaint." (Doc. 63 at 12.)  The Motion to Dismiss will be

denied as to Plaintiff's claim for substantive due process based on deprivation of the right to

familial integrity for the post-removal period of dependency which lasted for approximately

six years.  A separate Order is filed simultaneously with this Memorandum Opinion.


Robert D. Mariani
United States District Judge